## HUDSPETH *v.* STATE.

Decided January 16, 1892.

*Judgment—Removal of county seat—Collateral attack.*

> Where a lawful election has resulted in favor of the removal of a county seat to a designated place, an order of the county court directing that, until the county court house shall be built, the courts of the county shall held in a block adjoining the new location, is within its jurisdiction and valid against collateral attack.

APPEAL from *Clay* Circuit Court.

J. E. RIDDICK, Judge.

Appellant was convicted of a felony. By this appeal it is sought to test the validity of an order of the county court fixing the place for holding courts. The facts sufficiently appear in the opinion.

*F. G. Taylor* and *J. C. Hawthorne* for appellant.

1. Defendant was entitled to a new trial on the ground of newly discovered evidence.

2. The question whether the court was held at the place provided by law is properly before this court. 20 Ark., 78. The county court ignored the provisions of Mansf. Dig., secs. 1161–2; 60 Ill., 328. Block 5 was selected as the county seat by vote of the electors, and the county court had no power to designate any other place for holding the circuit courts. 14 Pac. Rep., 158; 24 Pac. Rep., 87.

*W. E. Atkinson,* Attorney General, and *Charles T. Coleman* for appellee.

1. There is no bill of exceptions, and the record presents no question for determination. 35 Ark., 536; 28 *id.,* 450; 30 *id.,* 585.

2. A motion in arrest brings up only the sufficiency of the indictment, or such errors only as appear of record, and for this purpose the evidence is no part of the record. 47 Ark., 233; 14 *id.,* 549; 1 Bail. (S. Car.), 270. See 8 Peters, 312. The question of jurisdiction was not properly raised.

HEMINGWAY, J. The grounds relied upon for a reversal are: first, newly discovered evidence; and, second, that the court, at which the defendant was convicted, was not held at the place provided by law for holding court in the eastern district of Clay county.

The evidence relied upon to sustain the first ground could be material only for the purpose of impeaching the prosecuting witness, and it has been repeatedly held by this court that the discovery of such evidence constitutes no ground for a new trial. *Redman* v. *State*, 40 Ark., 445.

The county seat of the eastern district of Clay county had been at Boydsville, and a lawful election had been held upon the question of its removal, which resulted in a vote in favor of a removal to the town of Piggott. A deed conveying block 5 in Throgmorton's second addition to the town of Piggott for a court house was executed and delivered to the county, with an abstract showing title in the grantor. The county court, after reciting these facts, ordered that Piggott be the permanent county seat, and that all courts in and for the district be held at Piggott, and that the house on lot 3 in block 4 of said addition be the court house, in which all courts should be held until a permanent court house should be built on block 5. In pursuance of this order the public offices and records of the county were removed to Piggott, and the circuit court held in the house therein designated, it being about 160 feet distant from the block conveyed for a court house, and a part of the same town.

It is contended that the order for the removal could not be made by the county court until a house was erected on the lot conveyed for it; and that no place not in the block conveyed could be designated for the holding of court. It must be borne in mind that these questions go to the jurisdiction of the court and not to the regularity of its exercise; for if it had power to make the order, an irregular or improper exercise of such power can avail nothing in this case.

It may be conceded that the court has no power to order

the change of a county seat except in pursuance of the vote of the electors upon that question ; but when such vote has been cast in favor of removal to a designated place, the court has jurisdiction to order the change ; and if it proceeds improperly, its orders are, like all other erroneous orders made by courts within the scope of their powers, valid against collateral attack.

The provisions of the digest (secs. 1161-1162) were designed to guide the courts in the exercise of their jurisdiction, as calculated to secure an orderly and frugal conduct of public affairs, as well as the safe-keeping of public records and papers. But if they were held to be jurisdictional, it would impair confidence in judicial determinations and occasion uncertainty and confusion in the most important affairs of life. No official or individual could rely upon a judgment, lest at some time it should be shown to be void by reason of some error which entered into a court's order fixing the county seat. For instance, section 1161 provides that no removal shall be made until a good and sufficient deed is executed conveying to the county the land sold or donated. Suppose the county court should accept a deed held by it to be good and sufficient and to convey title, but which was in fact bad and deficient and conveyed nothing, and should order a removal, in pursuance of which the place of holding court was changed, circuit court held, and a defendant tried, convicted and executed for murder ; could it be shown against the sheriff who executed the death warrant that the judgment was void, because the county court ordered a removal of the county seat upon the receipt of an insufficient deed ? The most important interests depend upon the judgments of courts, and their conclusiveness as to all matters adjudged, coming within the scope of the court's powers, is essential to the welfare and happiness of society. Questions of life, liberty, reputation, property, the marriage relation, the legitimacy or bastardy of offspring, are all determined by the judgments of courts, and it was never intended that those judgments should depend upon a proper

exercise of the powers of a court in ordering the removal of a county seat.

We think that the town of Piggott is the county seat, and that it was within the power of the county court to provide some other place than block five, within that town, to hold court, until the court house should be built ; just as it might do in case the permanent court house should be built and afterwards become unfit for use.

How far the order of the county court was premature and erroneous, if at all, we need not determine ; it was not void, and authorizes the holding of courts in pursuance of its provisions.

Affirm.