WALSH *v.* HAMPTON.

Opinion delivered November 7, 1910.

1.  COUNTIES—REMOVAL OF COUNTY SEAT—VALIDITY OF JUDGMENT.—
    Under Kirby's Digest, § 1115, providing, among other things, that it
    shall be unlawful to change any county seat until the place at which
    it is proposed to establish it shall be fully designated, "such designa-
    tion embracing a complete and intelligible description of the proposed
    location, together with an abstract of the title thereto," etc., it was
    within the province of the county court to pass upon the sufficiency
    of such abstract of title, and any error of that court in deciding that
    question cannot be taken advantage of in a collateral attack. (Page
    432.)

2.  SAME—REMOVAL OF COUNTY SEAT—STATUTE.—Under Kirby's Digest,
    § § 1115, 1117, providing that it shall be unlawful to change a county
    seat until the place to which it is proposed to change the county
    seat shall be fully designated, including "the terms and conditions
    upon which the same can be purchased or donated by or to the
    county," an order for removal of a county seat is not invalid because
    the proposed terms of sale are not as advantageous to the county
    as they should have been. (Page 432.)

3.  SAME—REMOVAL OF COUNTY SEAT—MODE OF ELECTION.—Under Kirby's
    Digest, § 1119, providing that the election [for removal of county
    seats] provided for in this act shall be understood in the same man-
    ner as general elections are required by law to be understood," the
    general election law applies to an election for the removal of a county
    seat. (Page 433.)

4.  COUNTY COURTS—CONTROL OVER ITS ORDERS.—While the county court is
    authorized to vacate and expunge from its records an order entered
    at a previous term, which is absolutely void, it has no authority to
    review such orders which are not void, even though they are irregular
    on account of errors. (Page 434.)

Appeal from Dallas Circuit Court; *Henry W. Wells,* Judge;
affirmed.

*Robert Martin* and *Miles & Wade,* for appellant.

1. A void judgment rendered by the county court can
lawfully be vacated after the term in which it was rendered has
expired. 89 Ark. 160; 23 Cyc. 697.

2. Any voter has the right to be made a party to the
record to contest a county seat removal proceeding. 54 Ark.
409; 72 Ark. 394; 23 Cyc. 697.

3. The judgment was void because no sufficient abstract
of title accompanied the petition. An abstract of title made
more than one year prior to the filing of the petition is not

sufficient. Kirby's Digest, § § 1115, 1117; art. 13, § 3, Const. County courts must base action on the record before them. They can not take judicial cognizance of who are the owners of property. 52 S. E. 777; 70 Ark. 270-274; 11 Cyc. 371; 15 L. R. A. 501; 18 Fla. 842; 97 N. W. 103; 83 N. W. 483; 25 Ind. 422; 24 Wis. 49; 20 Tex. 16; 60 Me. 356. No deed was filed, conveying the land proposed for county purposes. 46 Ind. 96. A provision that an election be held to locate a county seat within a certain time after presentation of a petition therefor is mandatory. 10 Kan. 162; 6 Nev. 104. See also 29 W. Va. 63.

4. The judgment is void because there was no valid election. Art. 13, § 3, Const.; 67 Ark. 593; 47 Kan. 44; 15 Kan. 530; Kirby's Digest, § § 1117, 1119; art. 3 § 3, Const.; Kirby's Dig., § 2789; 126 Ala. 615; *Id.* 660; art. 8 § § 1, 2, Const. Ala.; 80 Ky. 557; 19 Fla. 538-9; 47 Ill. 482; 15 Cyc. 316. If the general election law applies so as to furnish the election machinery for the holding of an election for special purposes, in which is included a county site removal, why should the Legislature expressly provide who should conduct school elections? Kirby's Digest, § 7591. Who should conduct local option elections? *Id.,* § § 51, 118-19. Who should conduct an election for the surrender of a city's charter? *Id.* 5550-2. Who should conduct a road tax election? *Id.,* § 2791. Who should conduct an election for a constitutional amendment? *Id.,* § 2785. In connection with section 1119, Kirby's Digest, see also Mansfield's Digest, § § 1158 and 2695.

The removal of a county site is a local concern over which the county court has exclusive original jurisdiction. 33 Ark. 194.

*T. B. Morton,* for appellee.

1. When a county court has passed upon a county seat question and rendered judgment thereon, that judgment becomes final at the end of the term, and it has no jurisdiction to modify or change such judgment at a subsequent term. 1 Ark. 497; 2 Ark. 66; 5 Ark. 23; *Id.* 576; 6 Ark. 92; *Id.* 292; 10 Ark. 241; *Id.* 454; 12 Ark. 95; 14 Ark. 203; *Id.* 568; 22 Ark. 174; 24 Ark. 50; 25 Ark. 212; 33 Ark. 454; 36 Ark. 513; 52 Ark. 316; 60 Ark. 155; 89 Ark. 160; 92 Ark. 388; 27 Ark. 214. The

petition did not set up a cause of action within the jurisdiction of the county court. It does not set up whether appellant voted for or against removal, nor in what respect it affected him. There was also a defect of proper parties, both plaintiff and defendant. Kirby's Digest, § § 5999, 6007, 6008; 15 L. Ed. (U. S.), 500, note.

2. The three judgments of the county court of which complaint is made are not void. 34 Ark. 105; 51 Ark. 34; 53 Ark. 476; 55 Ark. 323; 59 Ark. 483; 83 Ark. 236. If, however, it is held that the statutory requirements as to abstract of title, etc., are jurisdictional, it is contended that those requirements were complied with. The question of title to the designated property, both as to the abstract and deed, is committed to the judicial discretion of the county court. Kirby's Digest, § 1115. The petition sets up the fact that an abstract was filed, and same was filed with the petition, marked as an exhibit. The court had the right to pass upon the facts set up. 55 Ark. 565; *Id.* 323; 34 Ark. 105; 99 Am. St. Rep. 261; 106 *Id.* 23; 1 Pet. 328, 7 L. Ed. 164; 46 Ind. 96; 6 Pet. 691, 8 L. Ed. 547. The statute does not require that the deed be filed with the petition, but only that the petition show "the terms and conditions upon which the land can be purchased or donated by or to the county." Kirby's Digest, § § 1115, 1117.

3. The judgments of June 4, 1908, and of July 21, 1908, were valid. When the court ordered the election, directed that proper notices as required by law should be given thereof and that such election should be governed in all respects by the laws in such cases made and provided, it did all that was required of it. Kirby's Digest, § § 1117, 1118; 73 Ark. 238. Kirby's Digest, § 1119, not only meant to adopt section 2811, *Id.,* providing that "all elections by the people shall be by ballot," but also to adopt the entire election machinery of the election law. Kirby's Digest, § § 2763, 2764, 2765, 2766, 2792, 2793, 2800, 2804, 2849, 2850, 2853, 2854; 49 Ark. 227; 55 Ark. 324; 45 Ark. 401. When the returns of the election of July 15, 1908, were laid before the court, they were *quasi* records, conclusive of the result of the election until overcome by affirmative evidence impeaching their integrity. 50 Ark. 85; 73 Ark. 187; Kirby's Digest, § § 1121, 1125; 45 Ark. 400. The elim-

ination of Princeton after "for removal" had carried was lawful and proper. 53 Ark. 533; 61 Ark. 477.

McCulloch, C. J. Appellant, O. C. Walsh, in the present proceedings instituted by him in the county court of Dallas County, attacks the validity of an order of that court for an election upon the question of the removal of the county seat, and also an order of removal made pursuant to the vote at the election. On June 2, 1908, petitions were filed in the county court asking that the county seat be removed from Princeton, one of them asking in favor of Fordyce and the other asking in favor of Carthage. On June 4, 1908, upon consideration of these petitions, the court ordered an election to be held on July 15, 1908. On July 21 the votes were canvassed, and it was found that there was a majority of the votes for removal, but a failure by the majority to select the point of removal, and the court made another order on that day, as provided by statute, for an election to be held on August 29, 1908, to decide which of the two points having received the highest number of votes, Princeton or Fordyce, should have the county seat. The result of the last election was found, upon a canvass of the votes, to be in favor of Fordyce, and an order was made by the county court on October 6, 1908, declaring the result of the election and ordering the removal in accordance therewith. Since that time the courts have been held at the latter place.

In July, 1909, appellant, as a citizen and taxpayer, presented to the county court of Dallas County, sitting at Fordyce, his petition asking that the former orders of the court concerning the removal of the county seat be set aside, alleging that the same were void on account of the court having no jurisdiction to make the same. On the same day appellees, who are also citizens and taxpayers, and who were of the original petitioners who asked for the removal of the county seat, appeared and asked to be made parties, and filed their plea resisting the order prayed for by appellant. The county court made an order in accordance with the prayer of the petition of appellant, declaring the former orders of the court void; and appellees appealed to the circuit court, where, on hearing of the matter, the petition of appellant was dismissed, and the

judgment of the county court appealed from was set aside. From this judgment of the circuit court the appellant prayed an appeal to this court.

There are three grounds assigned for the attack on the removal proceedings in the county court. The first is that no abstract of title accompanied the original petition to the court for an election. The statute governing proceedings as to the removal of a county seat reads, in part, as follows:

"Section 1115. Unless for the purpose of the temporary location of county seats in the formation of new counties, it shall be unlawful to establish or change any county seat in this State without the consent of a majority of the qualified voters of the county to be affected by such change, nor until the place or places at which it is proposed to establish or change any county seat shall be fully designated, such designation embracing a complete and intelligible description of the proposed locations, together with an abstract of the title thereto and the terms and conditions upon which the same can be purchased or donated by or to the county. Provided, the county court shall not order the election hereinafter provided for, unless it shall be satisfied that a good and valid title can and will be made to the proposed new locations, or one of them. * * *

"Section 1117. Whenever the qualified voters of any county in this State to the number of one-third thereof shall join in the petition to the county court of such county for the change or removal of the county seat, embodying in the petition the designation and abstract of title and the terms and conditions of the sale or donation, as provided for and required by section 1115, the county court shall order an election to be held at the several voting places in the county, directing that the proposition of the petitioners for the change or removal shall be submitted to the qualified voters."

It is alleged in appellant's petition that the only abstract of title, or what purports to be an abstract of title, filed with the original petition for removal bears the following certificate: "I hereby certify that in April, 1907, I carefully examined the records in the office of the county circuit clerk and recorder of Dallas County, Arkansas, and the within is, as I believe, a correct abstract of all conveyances or other instruments of record affecting the title, at that time, to the land described

in the title page hereto; and that no judgments appeared of record that might become liens on said lands, and that taxes had all been paid thereon. Since that time the right-of-way through said lands across the north end has been sold to the Chicago, Rock Island & Pacific Railway Company. Witness my hand this the 30th day of May, 1908. (Signed) T. B. Morton, Abstracter."

It is insisted that the certificate to the abstract is not complete, in that it does not certify that an examination of the records had been made by the abstracter down to the date of the abstract, and that it contained a correct abstract of all conveyances affecting the title to that date. It is contended that the filing of a perfect abstract of title was jurisdictional, and that the whole proceedings failed because of the alleged defect in the certificate. The statute above quoted expressly provides that the abstract of title shall accompany or be embodied in the petition for removal before the county court shall order an election; but it is within the province of the county court to pass upon the sufficiency of the abstract. Any error of the court in deciding that question does not affect the validity of the order, and such error can not be taken advantage of in a collateral attack such as this is. *Hudspeth v. State,* 55 Ark. 323. The county court in its order for an election passed upon the sufficiency of the abstract, and found that the law had been complied with in this respect.

The next objection is that the original petitioners did not file with their petition a deed conveying the property which they proposed to donate to the county for county purposes. The statute does not require that. All that is required by the statute is that the terms and conditions upon which the new location can be purchased or donated shall be set forth. In this case there was filed with the petition for removal a writing, signed by the owners of the property, proposing to convey it to the county upon certain terms and at a certain price. This was a sufficient compliance with the statute. The fact that the proposed terms of sale were not as advantageous to the county as counsel now contend they should have been did not affect the jurisdiction of the court to make the order.

The statute further provides (section 1122) that after the election, before the county court shall make any orders for

the removal, "or, if made, before they shall be executed, the vendor or donor of the new location shall make or cause to be made and delivered to the county judge a good and sufficient deed, conveying to the county the land or location so sold or donated in fee simple, without reservation or condition," etc. It is not shown in the present attack that this has not been done.

The next and last attack made on the validity of the order of the county court is that in ordering the election it failed to specify the mode in which and means with which the election should be held. The only provision in the statute concerning this is that "the election provided for in this act shall be understood in the same manner as general elections are required by law to be understood, and the poll books thereof shall be returned by one of the election officers," etc. (Section 1119). It is alleged that this provision of the statute is meaningless, that the general election law on the subject does not apply, and that the county court should, in its order, have prescribed the mode of election. The Legislature has not authorized the county court to fix the mode of election; and, unless it falls within the statute as a general election, then there can be no valid election for the removal of a county seat. We do not think this contention can be sustained. There was at the time of the enactment of this statute, and is now, a complete system of election laws providing for the holding of general elections. It creates the machinery for the holding of elections, and keeps the election officers continuously in office from one general election until the time for the appointment of new ones immediately before the next general election. It is obvious that the Legislature meant in the above quoted language that an election for the removal of a county seat should be understood to mean a general election, so as to come within the terms of the general election law, and to fall within the scope of the machinery set in motion for that purpose. Any other construction of the language would not only destroy its meaning, but would defeat the whole purpose of the statute; for, unless this effect be given it, it would be impossible, under existing statutes, for a county court to order an election for the removal of a county seat.

Appellees have insisted here that it was beyond the power of the county court to entertain appellant's petition to set aside the former orders. We are of the opinion, however, that if the former orders were void, it was within the province of the county court to consider the petition to vacate them. A void order is of no effect whatever, and the question as to where the court should be held was a matter within the jurisdiction of the county court; and if there appeared on the record of that court an order which was absolutely void, it was within the province of the county court at any time to vacate it and expunge it from the record. This does not, however, permit the court to review orders made at former terms which are not void, even though they are irregular on account of errors. In other words, the county court could at a subsequent term vacate a void judgment, but could not correct or set aside one because it was found to be erroneous.

Upon the whole, the judgment of the circuit court dismissing appellant's petition was correct, and the same is affirmed.

KIRBY, J., not participating.