Vance *v.* Johnson.

5-3443                                    386 S. W. 2d 240

Opinion delivered February 1, 1965.

*Kaneaster Hodges* and *W. E. Billingsley,* for appellant.

*Smith, Williams, Friday & Bowen, Ponder & Lingo,* for appellee.

Sam Robinson, Associate Justice. On June 11, 1963, a special election was held in Sharp County, Arkansas. Among the issues voted upon were: (1) The elimination of the two present county seats at Hardy and Evening Shade, and (2) the establishment of a new, single county seat at Ash Flat.

Principally at issue is the necessary "majority vote" to enact such a change.

Following the election, the County Judge of Sharp County made an order of the court declaring the results, to wit:

| | |
|---|---|
| For Change | 1438 |
| Against Change | 618 |
| For Ash Flat | 1424 |
| Against Ash Flat | 623 |

There is no contest with respect to the above tabulations.

The County Court then found that there were 2,991 qualified electors in Sharp Counyt as reflected in the 1962-63 poll tax list filed in the office of the County Clerk; that although a substantial majority of those casting ballots voted for the change, 1,438 was not a majority of the 2,991 persons having paid a poll tax. This order was rendered on June 18, 1963. On December 2, 1963 (some five months later) an appeal was taken to the Sharp Circuit Court. That court held that a majority of those casting ballots in the election had voted for the change and that this was sufficient in law to establish the county seat in Sharp County at Ash Flat. Thus this appeal.

On appeal appellants contend:

(1) That the appeal from the County Court was not filed within the time allowed by statute.

(2) That removal of a county seat in Sharp County requires the consent of a majority of those having paid a poll tax.

(3) That there is no lawful authority for removing a county seat in Sharp County.

Under the Constitution appeals from judgments of the County Court are to the Circuit Court, under such restrictions as may be prescribed by law. Article 7, Sec. 33. The time within which an appeal may be taken has been limited to six months. Ark. Stat. Ann. § 27-2001 (Repl. 1962). Here appellee appealed within six months, but appellants assert appellee must comply with further limitations found in § 3-1203 and § 13-1216. We do not

agree. Section 3-1203 requires that all actions to contest a county election shall be commenced within twenty days following the election. The case at bar is in no sense of the word the contest of an election. An election contest involves the matter of going behind the returns and inquiring into the qualifications of the electors and other matters affecting the validity of the ballots. *Jones* v. *Dixon,* 227 Ark. 955, 302 S. W. 2d 529; *Parson* v. *Mason,* 223 Ark. 281, 265 S. W. 2d 526. Here, neither appellants nor appellee questions the certified returns, the elector's qualifications or any other matters regarding the validity of the ballots. On the contrary, both parties vigorously rely on these returns to establish their case. Appellee's sole concern on appeal is the law applied to these returns.

Section 13-1216 allows thirty days in which to appeal the County Court's order as to the results of the election. An appeal from that order would merely test the correctness of the Court's tabulation of the returns. *Jones* v. *Dixon,* supra; *Parsons* v. *Mason,* supra. The present appeal does not test the correctness of the Court's tabulations. To the contrary, appellee affirms these tabulations and merely attacks the law as applied to them. An appeal directed toward the Court's finding as to the tabulation is one thing. An attack on the law as applied to that tabulation is something entirely different. *Jones* v. *Dixon,* supra. As a matter of right, appellee had six months in which to appeal. Ark. Stat. Ann. § 27-2001 (Repl. 1962).

Authority for the removal of a county seat is found in Act 86 of 1875 (digested in Ark. Stat. Ann. § 17-201, et seq. [Repl. 1956]). Section 10 of this Act provides:

"That to ascertain the number of qualified voters of any county for the purpose of this act, and the lawful majority necessary to authorize the change or removal as herein provided for, *the county court shall be governed by the number of persons liable to pay a poll tax as returned upon the assessor's books.*" (Emphasis ours.)

In 1901 this section was amended to read "shall be governed by the number of persons who have paid their

poll tax . . . provided, this act does not apply to the counties of . . . Sharp . . ." (Nineteen other counties were also exempted.) Ark. Stat. Ann. § 17-209 (Repl. 1956). Because this Act exempted twenty counties, all agree that it was a local one. It remains valid, however, and in force until repealed, since it was enacted prior to the constitutional prohibition of local legislation adopted in 1926. Amendment Fourteen to the Arkansas Constitution provides:

"The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

In 1963 there was an attempted "reenactment" of the 1901 local act. In addition to somewhat materially changing the body of the act itself, it deleted Sharp County from the list of exempted counties so as to bring Sharp within the purview of the 1901 amendment. While the Constitution prohibits enactment or amendment of local legislation, it allows repeal. Appellants argue that the 1963 Act is repeal and therefore, not violative of the Fourteenth Amendment. We cannot agree. The "repeal" is of an exception, the final effect of which is to add on to local legislation and this procedure has been declared void and of no effect. *Johnson* v. *Simpson,* 185 Ark. 1074, 51 S. W. 2d 233. Therefore, the County of Sharp, having been expressly exempted from the operation of the 1901 Amendment and because the 1963 Act is void and of no effect, remains subject to original Section 10 of the 1875 Act. *Velvin* v. *Kent,* 198 Ark. 267, 128 S. W. 2d 686. Thus, it would appear from the Act that the necessary, lawful majority required for removal of a county seat in Sharp County is a majority of those liable to pay a poll tax as returned on the Assessor's list.

The undisputed proof in the record shows that since 1947 there have been no assessments of poll taxes, and therefore, no lists kept of persons liable to pay poll taxes in Sharp County. There was no such list available on the date these election results were to be declared (ap-

parently there have been no such lists maintained in the entire state since 1947).

Though Section 10 of Act 86 of 1875 requires the consent of a majority of those liable to pay a poll tax, other sections of the Act speak in terms of the consent of a "majority of the qualified voters of the county". Ark. Stats. Ann. §§ 17-201, 206 (Repl. 1956). Language similar to the latter has been interpreted to mean the consent of a majority of those voting at the election. *Glover* v. *Hot Springs Kennel Club,* 230 Ark. 544, 333 S. W. 2d 902.

Article XIII, § 3 of the Arkansas Constitution provides that the consent of a majority of those voting at the election is sufficient to change a county seat (though the Legislature may prescribe greater standards). *Vance* v. *Austell,* 45 Ark. 400.

Since the Act of 1875 provides for two standards, and since one has, in all practicality, become inoperative, the other must control; the people's business should not be stifled for lack of machinery to carry it into effect. Therefore, the consent of a majority of those voting at the election, as provided for in Act 86 of 1875 (Ark. Stats. Ann. § 17-201, et seq.) and consonant with the Constitution of the State of Arkansas, is lawfully sufficient to change a county seat in Sharp County.

The proviso in the 1901 Amendment contains this language: "Provided, *this act* does not apply to the counties of . . . Sharp . . ." (emphasis ours.) Appellants suggest that the words "this act" refer to the 1875 Act (as opposed to the 1901 Amendment) and thus Sharp, along with nineteen other counties, are without any lawful procedure for changing a county seat. We find no merit in such an interpretation.

Affirmed.