DON WARREN *v.* STATE OF ARKANSAS

5219                                    407 S. W. 2d 724

Opinion delivered October 24, 1966

[Rehearing denied November 28, 1966.]

*Shelby Ferguson* and *Bennett & Purtle,* for appellant.

*Bruce Bennett,* Attorney General; *Lance Hanshaw,* Asst. Atty. Gen., for appellee.

HUGH M. BLAND, Justice. The appellant was convicted for the crime of unlawfully and feloniously selling intoxicating liquor in a prohibited area in Sharp County Arkansas and the jury fixed his punishment at a fine of $1,000.00. From this judgment and conviction appellant has perfected his appeal.

Appellant does not contend that the evidence was insufficient to support the conviction, but relies entirely on two points:

"I. The defendant was deprived of the protection of Arkansas Statutes 39-206 and 39-208 and of his state and federal constitutional guarantees under Art. 2 Secs. 7, 8, 13, 18, 21 of the Constitution of Arkansas and under the 14th Amendment (relating to due process), the 5th Amendment (relating to due process of law) and under the 6th Amendment (relating to public trial by impartial jury) of the United States Constitution.

II. The court was held at a wrong and improper place, consequently the court was without jurisdiction to try the defendant and the conviction a nullity."

On April 1, 1966 appellant filed his motion to quash the jury panel alleging that Sharp County had been consolidated into one judicial district; that Ark. Stat. Ann. § 39-206 and § 39-208 require that the petit jurors be selected from all parts of the county; that all or 35 of the 36 persons summoned as jurors in this case resided in the old northern district of Sharp County which deprived appellant of his civil and constitutional rights.

On the same day, April 1, 1966, the court heard this motion, including the testimony of the jury commissioners, considered the stipulation entered into between the parties and found:

"That by Act No. 39 of the General Assembly of Arkansas of 1893 Sharp County was divided into two judicial districts, one being designated the Southern District with the county seat located at Evening Shade, and the other being designated the Northern District with the county seat at Hardy, and thereafter such county seats were established.

That by Act. No. 110 of 1933, the terms of the Cir-

cuit Court for the Northern District commence the first Monday in January and continue for one year and the term for the Southern District commences the second Monday in July of each year and continues for a year thereafter and also by said Act No. 110 of 1933, the jurisdiction of said two districts were made co-extensive, the court in each said district having jurisdiction co-extensive with the entire county.

That on February 1, 1965 the Arkansas Supreme Court affirmed an order of the Sharp County Circuit Court to the effect that by an election held in said county on June 11, 1963, a proper majority had voted to remove the county seats of Sharp County from Evening Shade and Hardy and to build a courthouse and establish a single county seat at Ash Flat, Arkansas.

That as yet no actual construction of a courthouse at Ash Flat has commenced.

That the various county offices and records still remain at Evening Shade and Hardy in the respective buildings heretofore utilized as courthouses and that the county governmental affairs, including the holding of Circuit Court, have been and are being conducted in the same or similar manner as prior to the aforesaid Supreme Court decision of February 1, 1965, and that there are no governmental affairs being conducted as yet at Ash Flat, Arkansas.

That in due time during the Northern district term, which commenced on the first Monday in January, 1965 the court appointed jury commissioners for the purpose of selecting lists of grand, petit and special petit jurors for service during the January 1966 term of the Circuit Court for the Northern District and that at the time designated the same persons selected as jury commissioners, to-wit: Fred Sweitzer, Willie Jean Oyler and Herbert Schales, re-

ported for service and were properly examined as to their qualifications and upon being found to be qualified were sworn as such and were instructed as to their duties as provided by law.

That in view of the fact there is as yet no courthouse at Ash Flat and none of the Sharp County Governmental affairs or offices have been conducted at or moved to Ash Flat, the court instructed said jury commissioners as it customarily had so instructed jury commissioners for the Northern District of Sharp County prior to the aforesaid Supreme Court decision of February 1, 1965 concerning their duties as such officials; that the court informed the jury commissioners as to the location of the line separating the Northern and Southern Judicial Districts of Sharp County and said Jury Commissioners were further informed of the aforesaid Act 110 of 1933 and that while thereunder the Northern and Southern Districts of Sharp County had coextensive jurisdiction in Circuit Courts, the commissioners could confine their jury selection to the area known as the Northern District but that if anyone residing South of the line separating said districts should be selected for jury service and if otherwise qualified, they would be eligible to serve as jurors in the Northern District.

That as shown by the list of jurors selected for the present term of the court, the greater part of the petit jurors so selected reside in the Northern District of the county and that only four were selected who resided in the Southern District.

That there was no systematic exclusion of person or group by the jury commissioners in their selection of persons for petit jury service for the present term of the court.

That the actions of the jury commissioners in their selection of petit jurors for this term of the court

were proper and that none of the defendant's rights have been violated by their actions and the defendant's motion to quash the panel should be overruled.''

We think the motion to quash was properly overruled by the court in view of the provision of Ark. Stat. Ann. § 39-208 (Repl. 1962) which is as follows:

"Preparation of lists of petit jurors and alternates —Indorsement of lists.—The commissioners shall also select from the electors of said county, *or from the area constituting a division thereof where a county has* [2] *or more districts for the conduct of circuit courts,* not less than twenty-four (24) nor more than thirty-six (36) qualified electors, as the court may direct, having the qualifications prescribed in Section 39-206 Arkansas Statutes 1947 Annotated to serve as petit jurors at the next term of court; * * * ''.

See, also, *Collins* v. *State,* 200 Ark. 1027, 143 S. W. 2d 1; *Terry* v. *State,* 149 Ark. 462, 233 S. W. 673.

The motion was properly overruled for the further reason that the record here fails to show that the appellant exhausted his peremptory challenges. In such a situation we have held that the appellant cannot complain of the composition of the jury. In the case of *Trotter & Harris* v. *State,* 237 Ark. 820, 377 S. W. 2d 14, cert. denied 379 U. S. 890, we said:

''* * * Throughout the years, no rule of procedure has been more consistently adhered to than the rule that a defendant cannot complain of the composition of the jury if he does not exhaust his challenges. In *Benton* v. *State,* 30 Ark. 32, decided in 1875, Chief Justice English pointed out that this rule had stood as a precept of criminal practice in this state, for a period of over 22 years. In a long line of cases, we have consistently upheld the rule to the

present time. A cursory examination of our cases reveals over thirty-five criminal cases in which this rule has been cited and adhered to.'' [Citing cases]

Appellant also contends in Point No. 2 that the court was held at a wrong and improper place and, therefore, without jurisdiction to try the defendant and the conviction resulting was a nullity. As pointed out before, an election was held to abolish the two districts and establish the county seat at Ash Flat. The results of this election came before this court in *Vance* v. *Johnson*, 238 Ark. 1009, 386 S. W. 2d 240, where this court held that only a majority of those voting was sufficient and the election effectively abolished the two districts and established the new county seat at Ash Flat. The election was held in 1963. *Vance* v. *Johnson, supra,* was decided on February 1, 1965 and according to the record nothing has been done to establish a new county seat at Ash Flat. All of the records of the courts are maintained and the business of the county is being conducted as before at the courthouses at Hardy and Evening Shade. Ark. Stat. Ann. § 17-201 et seq (Repl. 1956) provide the procedure necessary for a change of county seats. Ark. Stat. Ann. § 17-208 provides as follows:

''Commissioners for preparation of new county seat—Appointment and oath—Duties—Holding of court at new county seat.—When the deed to the new location shall have been executed and the title vested in the county, as provided in the preceding section, for the purposes and intention of this act [§§ 17-201—17-209], the county court is hereby authorized and empowered to appoint three [3] discreet citizens as the county commissioners, who shall take an oath to faithfully demean themselves as such, and who, under the orders and directions of the county court in pursuance of the provisions of this act, shall superintend and contract for, in the name and behalf of the county, the clearing, grubbing and laying off such new location into suitable and convenient town lots and the erection or pur-

chase of all needful buildings on such new location, preparatory to the actual removal and change of the county seat; and as soon as such buildings shall have been made ready for the several courts holden at the county seat [,] the respective officers thereof and the archives thereof, the commissioners shall report the same to the County Court at the next term, then in that case the next and every succeeding term thereof shall be held at the new county seat, and the Circuit Court and all other Courts for said county of superior or general jurisdiction shall be held at the new county seat, and all processes issuing therefrom shall be made returnable thereto.''

In *Williams* v. *Reutzel,* 60 Ark. 155, 29 S. W. 374, at page 158, we find:

''In every county of this state there is, and must be, a county seat. At it the county court is required to erect a good and sufficient courthouse and jail. The county, circuit and other courts held for the county must sit there. There is no other place designated by law for that purpose. The name 'county seat' indicates the object of its creation. It is, as defined by the Century Dictionary, 'the seat of government of a county; the town in which the county and other courts are held, and where the county officers perform their functions.' When the county seat of a county is removed, and the needful public buildings are made ready for the several courts holden at the county seat and the respective officers, the next and succeeding terms of the county court and the circuit court and all the other courts for said county of superior or general jurisdiction are required to be held at the new county seat.''

The court has recognized that in cases of emergency, such as the destruction of the courthouse by fire, the court itself may secure other quarters in the county seat for temporary use in the administration of justice. *Mell* v. *State,* 133 Ark. 197, 202 S. W. 33, citing *Hudspeth* v.

*State,* 55 Ark. 323, 18 S. W. 183; *Lee* v. *State,* 56 Ark. 4, 19 S. W. 16, and *Williams* v. *Reutzel, supra.*

In the proper administration of justice, Sharp County would be without any place to hold court if the contention of appellant were correct. The record does not indicate or show why the county court of Sharp County has not acted under the clear mandate of the electors of the county to establish a new courthouse at Ash Flat but until that action is taken and the new courthouse certified by the commissioners as ready for use, then the courts will have complete jurisdiction to hold court at Hardy and Evening Shade as before.

Finding no error, the judgment of the Sharp Circuit Court is affirmed.