Tally, Administrator of Riggs, *against* Reynolds.

Error *to Washington Circuit Court.*

It is a general rule that the mere appearance of an Attorney for the defendant is always deemed sufficient for the opposite party and for the Court, who will look no further, and will proceed as if he had sufficient authority, and leave any party who may be injured, to his action, unless there appear to be fraud or collusion in the case.

But a party may, before judgment, 'upon a sufficient showing, to be adjudged of by the Court, require the Attorney representing his adversary to show his authority.

To this purpose he must show to the Court, by affidavit, facts sufficient to raise a *reasonable presumption* that the Attorney is acting without authority.

The mere possession of the transcript of a judgment does not raise even a presumption, that the possessor of it is legally or beneficially interested in it.

The simple allegation that a party is " informed and believes" that the Attorney has no authority, without stating the facts upon which it is founded, is not sufficient to call for his authority.

The license and admission of an Attorney does not give him the right to appear for any particular person. To this end he must be *employed.*

This employment may be proved by circumstances, as well as by warrant of Attorney.

This was an action of debt. *Reynolds*, defendant in the court below, filed his affidavit, stating that he verily believed that the plaintiff's attorney had no authority to bring the suit, and his reasons for that belief. The attorney objected to the sufficiency of the affidavit, and his objections were overruled. He then introduced testimony to prove his authority. The court decided the testimony insufficient, and dismissed the suit. It is assigned as error that the court erred in deciding the affidavit sufficient, and also in dismissing the suit.

Walker and Fowler for the plaintiff in error: After the appearance and plea of oyer, the motion came too late. That admitting it. to have been in time, it did not set out a sufficient cause to warrant the court in entering the rule against him. The affidavit should have set forth the reasons upon which his belief is founded; for he does not affirm it to be true, absolutely, but only gives his belief; and the court should see upon what that belief was founded. The circumstances of the records being in the possession of the attorney, and his appearing in the case, create a presumption of authority, which must be met by a well founded belief. The question has been settled by the Superior Court of Arkansas. See the case of *Donlin, use of McPhail*, vs. *A. Standifer*, decided in this court, at January term,

LITTLE ROCK,
Jan'y 1838.

TALLY,
adm'r.
vs.
REYNOLDS.

1833, page 100; and in *Earhart* vs. *Murphy.* See 1st *Pirtle's Digest*, page 76, case 14; and *Johnson's Digest*, page 82, cases 22 and 23; 6 *Johns. Rep.* 37, 302; 1 *Salk.* 86, 88.

And said attorney further insists that if the court should be of opinion that the affidavit was sufficient, still the evidence adduced shows ample authority for prosecuting the suit; all of which will be clearly seen by reference to the record.

CUMMINS and PIKE, *contra:* This was an action of debt. The defendant in the court below filed his affidavit stating that he verily believed that the plaintiff's attorney had no authority to bring the suit; and stating his reasons for that belief. The plaintiff's attorney objected to the sufficiency of the affidavit, and his objections being overruled, he introduced testimony to prove his authority to prosecute the suit. The court decided the testimony to be insufficient, and dismissed the suit. The plaintiff in error assigns as error that the court below erred in deciding the affidavit of the defendant to be sufficient, and also in dismissing the suit.

The defendant in error contends, first, that the affidavit was sufficient to put the plaintiff's attorney upon proof. There are no statutory provisions on the subject, and we are to be guided by the rules of practice, in this respect, in England and our sister States. Nothing is better settled in England than that no attorney can appear without a regular warrant of attorney. 1 *Bac. Ab. Attorney, c. t.* It is true that in this country the practice has not been to call upon attorneys for the warrant and authority by which they appear. That such has not been the practice, is creditable to the profession; yet when the authority is disputed, it must be made to appear. Practice has only dispensed with, and not abrogated the rule. It has been the common practice in England, when no authority could be produced by the attorney who brought the suit, to dismiss on the mere motion of the defendant alone, for want of that authority. From this follows,

Secondly, That the court below did not err in dismissing the cause, inasmuch as no regular warrant of attorney was produced. See, as to the points here taken, 2d *Yerger*, 325, *Gillespie, ex parte.* The attorney who obtains the judgment cannot issue a *capias ad sat.* without a new warrant of attorney; nor after his client, who was plaintiff, dies, can he revive the suit or take any other step in it, without such new warrant of attorney. Professional courtesy may dictate that the

authority by which a brother attorney acts, should not be disputed; but when it is so done by express instruction of the client, the court must administer the law, and decide, as the court below did, that the attorney will not be presumed to have any authority to appear in the cause, but must produce such authority. See 2 *Bibb*, 382, *Richardson* vs. *Talbot;* 2 *J. J. Marsh.* 184, *Ball* vs. *Lively;* 3d *Monroe*, 189, *Mc Alexander* vs. *Wright;* 2 *Bibb*, 284; *Ark. Dig.*, Jud. Pro. sec. 58.

Third, But even granting that a warrant of attorney was not ne cessary, the plaintiff's attorney utterly failed to prove his authority by parole. One witness deposed that he had talked with the plaintiff, *Tally*, about the solvency of the defendant; that he afterwards con versed with *Fulton*, an attorney in the original suit, about it; and that he had received a letter from one *Holman*, who *said* he had bought an interest in the judgment. He did not know from whom he received the record for collection, but infers it to have been *Ful ton*, for reasons stated. That he brought the record from Tennessee, and gave it to the plaintiff's attorney. The plaintiff's attorney stated that *Holman* sent him a copy of the letters of administration; said that he had an interest in the judgment, and urged its collection. Here was no proof whatever, of any authority from *Tally*, to the plaintiff's attorney.

Fourth, A writ of error will not lie in such a case as the present. See 3d *Yerger*, 325, *Gillespie, ex parte;* and this cause must be stricken from the docket for want of jurisdiction.

RINGO, *Chief Justice*, delivered the opinion of the court: This was an action of debt founded on a record of the Circuit Court of Lincoln county, in the State of Tennessee, brought in the name of the present plaintiff, against the defendant, in the Washington Circuit Court. The defendant appeared in the court below, and after filing a prayer of oyer of the record, and letters of administration mention ed in the declaration, on his affidavit then filed, obtained a rule against the attorney prosecuting the suit, to show by what authority he prosecuted the same. The affidavit stated in substance that *David Walker*, the attorney prosecuting the suit, had no warrant or authority to prosecute this suit, as he verily believed; and that this belief was founded on the fact that the plaintiff is a resident of the State of Tennessee, and the papers were in the hands of *A. F. Greer*, and by him placed in the hands of said *Walker*, without the consent

LITTLE
ROCK,
Jan'y 1838.

TALLY,
adm'r,
vs.
REYNOLDS.

or knowledge of said *Tally*. On the return of the rule, the attorney prosecuting the suit, produced a witness who testified that whilst an attorney at law, he conversed with the plaintiff in this suit, relative to the solvency of the defendant, who resided in Arkansas, and his ability to pay said debt; that he responded to plaintiff that defendant was good. That he afterwards conversed with *Fulton*, an attorney in the original suit, about the collection of said debt; and after his arrival in Arkansas, he received a letter from ———— *Holman*, who said he had bought an interest in the judgment. He does not recollect which of these gentlemen gave him the record for collection which is the ground of action in this suit; but from circumstances infers that it must have been *Fulton*, as the plaintiff lived some distance from, and *Fulton* lived in town; that he brought said record from Tennessee, and placed it in the hands of *David Walker*, the attorney prosecuting this suit for collection, and took the receipt of said *Walker* and *A. F. Greer*, for the collection of the same. *Walker*, the attorney prosecuting the suit, also testified that he conversed with the defendant long before this suit was brought, and showed him the record, and upon his refusing to pay, wrote to Tennessee and procured the letters of administration granted to the plaintiff. They were sent to him by *Holman*, who stated that he had an interest in the claim, and urged the collection thereof. Upon that evidence the court decided that the attorney had not shown any sufficient authority to prosecute the suit; and thereupon made the rule absolute, ordered the suit to be dismissed, and rendered judgment for costs in favor of the defendant, against the plaintiff.

The plaintiff excepted to the opinion of the court, and by his bill of exceptions spread the evidence on the record; and has brought the case before this court by writ of error. The assignment of error questions the decision of the court below:

1st, That the affidavits of the defendant were sufficient in law to require the attorney to produce and show his authority to prosecute this suit: and 2d, That the authority shown upon the rule against the attorney was not sufficient to enable him to prosecute the suit. The right of the defendant to call upon the attorney representing the plaintiff to show his authority, does not appear to have been questioned; but its exercise was resisted on the ground solely that the facts disclosed by the affidavits were not sufficient in law to authorize the interference of the court for that purpose. And the validity of this

objection to the case shown by the affidavits, is the first question pre- sented by the record, and made by the assignment of errors, for the decision of this court. The circumstances under which the authority of an attorney regularly licensed and duly admitted to practice in the courts, may be questioned, and the attorney required to have his authority, do not appear to be very clearly defined, or very accurately stated in any of the authorities or books of practice to which we have been referred or had access. One general rule is, that the mere appearance of an attorney for the defendant is always deemed sufficient for the opposite party, and for the court; who will look no further and will proceed as if he had sufficient authority, and leave any party who may be injured, to his action, unless there appears to be fraud or collusion in the case. This rule appears to have been too long and authoritatively settled to be now disturbed. Under its influence the Supreme Court of the United States have decided that the non-appearance in the record of an authority to the attorney to prosecute or defend the suit was not error. Osborn vs. *the Bank of the United States*, 9 *Wheaton*, 738; 5 *Peters' Cond. Rep.* 752; and the Supreme Court of New York, after a most elaborate examination of authorities, decided that the confession of judgment by an attorney without any authority therefor, from the defendant, was not irregular, and refused to set it aside, although the defendant's affidavit was positive that he had not in any manner, directly or indirectly confessed or authorized the confession of any judgment. The court, however, after it had ascertained and stated the rule, and admitted its authority, subjected it to such modifications as justice required, and leaving the judgment to stand as a security to the plaintiff, to save the defendant from injury and prevent abuse in the practice granted to the defendant leave to plead to the merits within a limited time, and during that time suspended the execution of the judgment; but in the default of such plea, the plaintiff was at liberty to proceed with his execution, under said judgment. 6 *Johnson's Rep.* 296, *Denton* vs. *Noyes.* The Supreme Court of Pennsylvania have acted on the same principle, in *McCullough* vs. *Guefner*, 1 *Binney* 214; an attorney undertook to appear for a defendant not summoned, and without any warrant of attorney, and the court held the appearance good. In England, the Court of King's Bench, on the same ground compelled an attorney, who had, through misinformation, undertaken to appear for the defendant, without warrant or direction, to complete his appearance, so as to

LITTLE
ROCK,
Jan'y 1838.

TALLY,
adm'r,
vs.
REYNOLDS.

render the judgment which the plaintiff had taken by default, regular: 1 *Str.* 693, *Lorymer* vs. *Hollister.* Other authorities might be cited in which the same principle has been recognized and acted on in the United States as well as in England; most of which were examined, reviewed, and cited in the case of *Denton* vs. *Noyes*, 6 *Johns.* 296. But however conclusively this general rule may have been established, it does not follow as a necessary consequence that a party may not, before judgment, upon a sufficient showing, to be adjudged of by the court, require the attorney representing his adversary to show his authority. This right is essential to the security of all suitors, and its existence cannot be denied. In *Howe's Practice*, page 31, title *Warrant of Attorney*, it is said, "If the defendant suspects that the suit has been commenced without the authority of the plaintiff *on the record*, he may call on the plaintiff's attorney for proof of his authority." This right was elaborately discussed by the Court of Appeals of Kentucky, in the case of *McAlexander* vs. *Wright*, 3 *Monroe's Rep.* 189. And it was there decided that the defendant had such right, and upon a sufficient showing that his right was jeopardized, or that he was disturbed by being brought into litigation without the consent of the man who stood on the record as his adversary, he was entitled to its exercise. According to the rule settled by the Court of Appeals of Kentucky, it is incumbent on the party undertaking to question the authority of the attorney representing his adversary, to show to the court by affidavit, facts sufficient to raise a reasonable presumption that the attorney is acting in the case without authority from the party he assumes to represent, then, and not until then, the attorney may be required to show his authority.

In defining this rule, which we understand to have been the settled rule of practice in the courts of England and most, if not all, of our sister States, we would not be understood as imposing on the profession hardships in their management of suits, or deciding that they are bound to gratify the party to which they are opposed with a sight of their authority upon light or frivolous grounds; but when substantial reasons are shown why the interest of the adverse party is jeopardized by the prosecution of suit without the leave or consent of the real owner of the demand, every reasonable person will agree that their authority ought to be shown.

The facts stated in the defendant's affidavits in this case, we think were such as to entitle him to the rule against the attorney prosecut-

ing the suit to show his authority. He shows that the record was placed in the hands of the attorney by *A. F. Greer, without the consent or knowledge of the plaintiff,* and that the plaintiff resided in Tennessee. These facts must be regarded as strong circumstances, tending directly to show that *Tally* had no hand in this suit; and for that reason the defendant might be in danger of another contest with him for the same demand. We will here remark that the facts shown in this case are just sufficient to raise a legitimate legal presumption against the attorney's authority; and if the facts that the record was placed in his hands by a third person, and not by the plaintiff, and without his consent or knowledge, had been less positively stated, the rule ought not to have been granted. In cases like the present, where the action is founded on the judgment of some court, a transcript of the record whereof may be procured at any time, and by any person who will pay the legal fees therefor, and suit be instituted in the name of the judgment creditor, without his knowledge or consent, and the money coerced from the defendant without any authority whatever from the real owner of the demand; and because the mere possession of such transcript does not raise even a presumption that the possessor has any legal or beneficial interest in the judgment, the custody of which does not belong to the creditor, the rule should be made whenever it is shown that there is a reasonable probability that the suit is prosecuted without authority of the judgment creditor or other person really and beneficially interested in the judgment; but where the action is founded on any written obligation, the obligee has the legal custody of the instrument and if any other has the possession of it the legal presumption is that he obtained it fairly and with the consent of the obligee; and this presumption stands, unless repelled by evidence: therefore, in such cases, stronger circumstances should be required to be shown than in the case of record, to induce the court to grant the rule against the attorney to show his authority. We have been referred to the case of *Standifer* vs. *Doulin, for the use of McPhail,* decided by the Supreme Court of the late Territory of Arkansas. In that case, as in this, an affidavit was filed by the defendant denying that the attorney prosecuting the suit had any authority for that purpose. The affidavit there stated that the defendant was informed and believed that that suit had been instituted against him by *John McPhail* and his counsel, without any lawful authority from the plaintiff; and

N

LITTLE ROCK, Jan'y 1838.

TALLY, adm'r, vs. REYNOLDS.

he had good reason to believe that neither *McPhail* nor the attorney could execute a legal acquittance for the debt, if it should be paid to them. There was no statement of the facts or circumstances upon which the fears of the defendant were founded, and for that reason it was held insufficient to require the attorney to show his authority. The principle of that decision meets our approbation fully. The simple allegation of information and belief, without stating the facts upon which it is founded, however positively asserted, ought not, in our opinion, to be held sufficient. The facts themselves should be stated, to enable the court to determine how far they warrant the conclusions of the party. In the case before us, the facts are stated, and in that, this case differs from the case of *Standifer* vs. *Doulin, for the use of McPhail.*

We are, therefore, of the opinion that the affidavits filed in this case were, in law, sufficient; and that the court did not err in granting the rule thereupon.

The second question is, did the court err in deciding that the authority shown by the attorney representing the plaintiff was insufficient? The general right of an attorney regularly licensed and duly admitted to practice in courts to appear for all of the suitors in courts for whom he may be employed, is admitted. This right he has by virtue of his license and admission, and it is proved by the production of the license, and the law under which it was granted; but it is not of itself an authority to appear as the representative of any particular person, until he is in fact employed or retained for that person. Then, and not until then, he becomes his attorney and representative, and is authorized to appear in his stead.

In the case before us, no warrant of attorney for the plaintiff was produced, nor any evidence whatsoever that he had retained or employed the attorney to prosecute this suit or collect the demand in question. One witness (whose name is not even mentioned in the record) testifies that whilst an attorney at law, he conversed with the plaintiff relative to the defendant's solvency and ability to pay the debt, and informed him that the defendant was good; and that he afterwards conversed with *Fulton*, who had been an attorney in the original suit about the collection of this debt. That one *Holman,* afterwards informed him by letter that he had bought an interest in the judgment. He does not recollect who gave him the record, but infers that he received it from *Fulton*. He brought it from Tennessee

and placed it in the hands of WALKER, the attorney prosecuting this suit, for collection; and took the receipt of WALKER and *A. F. Greer*, for its collection. WALKER, himself, testified that he showed the record to the defendant and conversed with him about it long before this suit was brought, and his refusal to pay: that he wrote to Tennessee and obtained the plaintiff's letters of administration, which were sent to him by *Holman*, who stated he had an interest in the claim, and urged its collection.

From a careful examination of this testimony, it is apparent that the plaintiff has taken no part whatever in the present controversy: neither the transcript of the record nor letters of administration, appear to have been procured or sent by him; nor does he appear to have given any instruction about them, or to have been consulted in relation to the matter. No letters were written to or received from him. Once, indeed, he did converse with the witness about the defendant, and his ability to pay; but he is not shown to have done any thing more. The witness does not pretend to have acted as his agent, or by or under his directions or authority, in bringing the transcript of the record from Tennessee to Arkansas, and placing it in the possession of WALKER and *Greer* for collection. If he had acted as the agent of the plaintiff, why did he not say so? We cannot believe that a point so important would have been silently or inadvertently passed without explanation, if the fact had been so: and his silence on that subject furnishes strong presumptive evidence that he did not act in that character. The evidence in regard to *Holman's* conduct in the matter, cannot help the attorney; for although *Holman* appears to have corresponded with him and urged the collection of the claim, and at the same time claimed an interest in the judgment, yet he is not shown to have had, in fact, any interest whatever in the matter; and until that was shown by some right delivered from the plaintiff or his intestate, he could not be regarded as a person competent to confer the authority requisite to enable the attorney to prosecute this suit. We are therefore of the opinion that the attorney representing the plaintiff did not show any competent legal authority to prosecute this suit, and there is no error in the decision of the court below.

The judgment of the Circuit Court is therefore affirmed, with costs.