McCAIN, LABOR COMMISSIONER, *v.* COLLINS.

4-6848                                    164 S. W. 2d 448

Opinion delivered June 15, 1942.

522

*P. A. Lasley,* for appellant.

*Chas. B. Thweatt,* for appellee.

MEHAFFY, J.   The appellant is the Commissioner of the Department of Labor of Arkansas, and the other appellants are the members of the merit system council and the merit system supervisor. The appellee was the qualified director of the employment security division of the department of labor of Arkansas.

The appellee was discharged by the Commissioner of Labor and appealed to the merit system council from said dismissal. The merit system council, after a hearing, approved the action of the labor commissioner and ordered that his dismissal be permanent.

Appellee Collins then applied to one of the judges of the Pulaski circuit court for a writ of certiorari to bring the proceedings of the merit system council before that court for review, and on the hearing before the circuit court a judgment was rendered quashing the order of the merit system council, and an appeal has been duly prosecuted to this court.

On the hearing of the cause before the circuit court the record as made before the merit system council, including all the oral testimony adduced, was considered and parties permitted to introduce additional testimony.

The charges against Collins, as stated by him in his brief, are as follows:

"(1) A poker game has been openly conducted in the offices of the agency for many months, during the noon hour, in which a number of employees of the agency participated.

"(2) The director was a patron of bookie agents and bet on horse races; that bets were generally placed by the director and employees of the agency during business hours; one Delbert Plant, a representative of the bookie agent, called regularly on the employees of the agency to solicit bets on horse races.

"(3) The merit system rules have been ignored in many instances, promotions have been made without regard to qualifications or efficiency, resulting in general dissatisfaction.

"(4) The director has raised the salary of favorites in preference to capable employees who should have been given consideration.

"(5) The plaintiff has unlawfully remitted penalties.

"(6) That plaintiff has been guilty of employer discrimination."

John I. Hogue, who was supervisor of the Arkansas Merit System Council, testified in substance that the employment security division of the Department of Labor, the state Department of Public Welfare and the State Board of Health are agencies that the merit system applies to, and agencies to which the federal government contributes expenses and personnel. Witness became connected with the merit system on February 15, 1940. The council at that time had certain rules and regulations governing the operation of the district. A copy of the rules and regulations was then introduced in evidence. Witness does not know of any promotions or employment in the security division that have not been in keeping with the rules; that is, no formal promotions. A list of promotions was introduced in evidence, by agreement. Witness said it is not in keeping with the rules and regulations of the merit system to promote a person to a position that carries with it an increase in salary and at the same time require that person to divide the increase in salary with someone else who does not receive a promotion. If such a case had been called to witness' attention, he would have had to take an exception to it; does not recall when Wahlgreen and Neighbors were promoted or that there was any information coming to him as to an agreement whereby the one receiving a promotion and increase in salary was to turn over a portion of the increase to the other. Inasmuch as this practice of dividing the increase in salary of the one promoted is not in keeping with the merit system, it would probably have a tendency to destroy the merit system. If by agreement the party promoted is required to share the raise with someone else, then false records are made. The Commissioner of Labor is the one who actually appoints, promotes and raises salaries.

Ben C. Shipp, chief of the benefits section of the employment security division, testified that he had been with the agency all the time that the appellee had been director; knew that a poker game was carried on during the noon hour on the second floor of the agency; those participating in the game were employees of the agency, and the game was carried on openly; could have been

seen by anyone on the second floor; during the game there would be onlookers; witness participated in the game once or twice; it was generally understood by the employees that appellee was a patron of the bookies and bet on the horse races; witness had seen racing forms on appellee's desk quite frequently during business hours. This witness also testified about Mrs. Wahlgreen and Mrs. Neighbors; that one of them received a promotion on condition that she split the increase in salary with the other; the bookie agent was frequently in conversation with Hicks.

A number of witnesses testified about the poker game and the betting on horse races, and the division of the increase in salary.

Witness Horace Wilson testified that he had been in appellee's office many times during business hours and had seen and heard Hicks and appellee discussing the races and studying racing forms. The poker games stopped shortly after the first of the year, but betting on horses continued, although not quite so openly. Witness had seen appellee and Hicks in appellee's office discussing racing and racing cards after the notice was posted prohibiting gambling; these discussions took place during business hours.

Randall Falk testified that in view of the circumstances he could not imagine that the appellee was not cognizant of racing forms being kept on the desk of his secretary.

Another witness, Marvin E. Clark, testified about the bookie agent and having seen racing sheets on the desk of appellee's secretary. He also testified that there was a general feeling among the employees that promotions were given to undeserving employees, and such views were the rule, and not the exception.

H. L. Lambert, cashier of the agency, testified that he has seen poker games in progress on the second floor a number of times, and had seen Delbert Plant, a bookie agent, in the offices of the agency almost daily for months.

C. W. Cobb, tabulating supervisor, testified that he had frequently seen poker games in progress; almost a daily occurrence; had seen the bookie agent with Hicks and racing sheets on Hicks' desk and had seen them on appellee's desk during business hours. The poker playing and horse race betting was carried on for about two months and the betting continued throughout the season at Hot Springs.

H. O. Arendt, an employee of the agency, testified that favoritism was in fact shown.

Marvin Clark, principal clerk in the contributions section, testified among other things that upon instruction from the appellee an employer received credit for taxes which he supposedly paid to the agency. A check for nearly $1,000 was given the agency, which enabled the employer to receive credit, and the check was returned unpaid. Appellee instructed that the check of the employer be held up until April 30, 1941. In the meantime the agency had certified that the employer had paid his taxes, when as a matter of fact such tax had not been paid and had not been paid at the time the witness testified.

There is evidence of witnesses who did not see the gambling and did not know of it, and also some evidence contradicting the evidence above set forth, but we are of opinion that there was substantial evidence to support the finding of the council.

The case of *Hall* v. *Bledsoe,* 126 Ark. 125, 189 S. W. 1041, construes the statute and reviews the authorities on the subject of certiorari. It would serve no useful purpose to again review those authorities, since there has been no change in the statute (see § 2865, *et seq.,* Pope's Digest) and none in the decisions of this court since the decision in that case, in which the court said: ''Again, it is very plainly settled, we think, that the writ of certiorari is available for the purpose of giving opportunity to review the decision of the board in removing an officer pursuant to the terms of the statute.'' The following cases were cited in support of the above statement of the law: *Pine Bluff Water & Light Co.* v. *City of Pine Bluff,*

62 Ark. 196, 35 S. W. 227; *State, ex rel., v. Railroad Commission,* 109 Ark. 100, 158 S. W. 1076.

The court in the Bledsoe case also said: "It has been expressly held by this court that the scope of the writ of certiorari at common law is not enlarged by the statutes of this state on that subject." Citing authorities.

In the Bledsoe case, the court quoted with approval from the case of *Merchants & Planters Bank* v. *Fitzgerald,* 61 Ark. 605, 33 S. W. 1064, stating: "According to the well-settled practice in this state the writ of certiorari can be used by the circuit court in the exercise of its appellate power and superintending control over inferior courts in the following classes of cases: (1) Where the tribunal to which it is issued has exceeded its jurisdiction; (2) where the party applying for it had the right to appeal, but lost it through no fault of his own; and (3) in cases where the superintending control over a tribunal which has proceeded illegally, and no other mode has been provided for directly reviewing its proceedings. But it cannot be used as a substitute for an appeal or writ of error, for the mere correction of errors or irregularities in the proceedings of inferior courts."

On hearing the writ, the court does not proceed *de novo* and try the case as if it had never been heard in the inferior court. The office of the writ is merely to review the errors of law, one of which may be the legal sufficiency of the evidence. As the court said in the Bledsoe case: "for the purpose of testing out that question the circuit court is, by the statute, empowered to hear evidence *de hors* the record in order to ascertain what evidence was heard by the inferior tribunal, and to determine whether or not the evidence was legally sufficient to sustain the judgment of that tribunal."

All of the evidence has been accurately preserved, and the question here is whether the council acted arbitrarily and without legally sufficient evidence. We have set out sufficient evidence to show that there was substantial evidence upon which the council based its finding, and neither the circuit court nor this court has any authority to pass on the question of the preponderance of the evidence.

As said in the Bledsoe case: "We are not called on to decide primarily whether or not the decision of the board was correct. The lawmakers have placed that authority in the board of control, and it would be clearly an encroachment by the courts upon the authority of another department of government to undertake to substitute the judgment of the judges for that of the members of the tribunal vested with authority to manage the institutions of the state and to appoint and remove those who are placed in charge. When all the testimony in the case is considered and viewed in the strongest light to which it is susceptible in support of the board's findings, it cannot be said that there is an entire absence of evidence of a substantial nature tending to establish the charge of inattention and neglect of duty on the part of the superintendent. This being true, it becomes the duty of the courts, upon well-settled principles of law, to leave undisturbed the action of the tribunal especially created by the lawmakers to pass upon those questions. Any other view would make the board of control a mere conduit through which a decision on the removal of an unfaithful or inefficient superintendent would be passed up to the courts instead of leaving the matter where the lawmakers have placed it, in the hands of the board."

In the Bledsoe case there was a dissenting opinion written by the late Judge HART which was concurred in by the late Judge WOOD. In that opinion it is said: "Of course I do not think the circuit court should weigh the evidence to decide where the preponderance lies, but I think the finding of the board is subject to review if there is no evidence to reasonably support the charges from any fair viewpoint." It seems, therefore, that under the principles announced in the dissenting opinion, we do not decide where the preponderance lies, but it is subject to review if there is no evidence to reasonably support the charges from a fair viewpoint.

There were many persons employed by the agency and, of course, it would be difficult for the director to know everything that occurred among so many employees; but there is substantial evidence to the effect that there was gambling going on, both poker games and

horse race betting, and the evidence shows that these things were carried on in such a manner that the director, if attending to his duties, would be bound to have knowledge of them. We do not judge the weight of this evidence, however, for it is a matter for the council.

Having reached the conclusion that there was sufficient evidence to justify the action of the council, it follows that the circuit court erred in quashing the order.

The judgment is, therefore, reversed, and the writ of certiorari dismissed.

MEHAFFY, J., ON REHEARING. Appellee calls our attention to the fact that the salary question was raised in the original case and discussed, but that the court did not pass on it. In this the appellee is correct, and the only question raised in his petition for rehearing is this one.

The rules under which Collins was working provide, among other things: "The appointing authority, after notice in writing to an employee stating specific reasons therefor, may dismiss an employee who is negligent," etc.

It is also provided that after notice the appointing authority may suspend an employee. Notice, of course, is required to be given so that the employee may have a hearing and that he may present any defense he may have. In this case the notice was not given and Collins really had no opportunity to have a hearing and present his defense until he appealed to the Merit System Council.

"It is thoroughly settled that where an officer does not hold at pleasure, but holds during good behavior or subject to removal for specific causes, then before he can be removed, there must be notice and a hearing given to him." *Lucas* v. *Futrall,* 84 Ark. 540, 106 S. W. 667; Mechem's Public Officer, § 454; 23 Amer. & Eng. Enc. of Law 437, 438; *State* v. *Hixon,* 27 Ark. 398; *Lee* v. *Huff,* 61 Ark. 494, 33 S. W. 846.

This court has uniformly held that where an employee or officer holds subject to removal for specified causes, and where notice and hearing are required, there must be the notice and hearing before the discharge.

After he appealed to the Merit System Council, Collins had a hearing and the council approved the finding

of the commission and ordered that his dismissal be permanent. This order of the council was treated as taking effect on October 8th, when it should have been held to be effective on December 10th.

We are, therefore, of opinion that until there was notice and hearing, Collins was entitled to his salary; that his dismissal did not become effective until the finding of the council, and he should have his salary up to that time. Since the judgment in this case has been reversed and writ dismissed, the cause is remanded to the circuit court with directions to ascertain the amount of salary for the period herein indicated, and to give judgment therefor.