CHARLES N. McKENZIE ET AL v.
MYRTLE BURRIS ET AL

73-73                                500 S.W. 2d 357

Opinion delivered October 22, 1973

*Williams & Gardner, Wright, Lindsey & Jennings,* and *Smith, Williams, Friday, Eldredge & Clark,* for petitioners.

*Krivcher & Cox* and *Mobley & Smith,* by: *Oscar Fendler,* for respondents.

JOHN A. FOGLEMAN, Justice. Petitioners are defendants in a medical malpractice action brought by Myrtle and Billy D. Burris in the Circuit Court of Pope County. They seek by writ of certiorari to quash the order of that court granting the motion of Mobley and Smith, as attorneys for the Burrises, to enter the name of James S. Cox as an attorney of record in this case to assist them, as associate counsel, in all phases of trial of the action. Mobley and Smith is a firm of attorneys licensed to practice in Arkansas and residing in Pope County. It was employed by the Burrises and, pursuant to that employment, filed a complaint. After answer had been filed by petitioners, Mobley and Smith filed the motion in question. Petitioners then moved to strike the order granting the motion of Mobley and Smith, alleging that this case was not one wherein a nonresident attorney was seeking admission for a single or particular case because, they alleged, Cox was practicing law in Arkansas without having been licensed to practice in Arkansas. This motion was denied.

It is admitted that Cox is a resident of Memphis, Tennessee, where he maintains his office for the practice of law and that he has been admitted to practice law in all courts of the state of Tennessee, but has not been licensed in any other state. Cox had previously participated, as associate counsel in one personal injury case, a will contest, and six medical malpractice actions filed in Arkansas. He had also consulted with Arkansas attorneys with respect to two other medical malpractice cases in which no suit has been filed.

It has been suggested that the petitioners, as the adversaries of the plaintiffs who would be represented by Cox, have no standing to question, on certiorari, the right of Cox to participate in the trial, or the right of respondents or their attorneys, Mobley and Smith, to employ Cox as an associate attorney in the case. It has been recognized in this state for 135 years that a party whose interest might be jeopardized by prosecution of a suit against him may require even a regularly licensed attorney, duly admitted to practice in the courts of this state, to show his authority to represent an adversary. *Tally,*

*Admr.* v. *Reynolds,* 1 Ark. 99. See also, *Cartwell* v. *Menifee,* 2 Ark. 356. This right has subsequently been recognized in *Pekin Stave & Mfg. Co.* v. *Ramey,* 104 Ark. 1, 147 S.W. 83; *Red Bud Realty Co.* v. *South,* 153 Ark. 380, 241 S.W. 21; and *Nunez* v. *O. K. Processors, Inc.,* 238 Ark. 429, 382 S.W. 2d 384. It is widely held in other jurisdictions that proceedings in a suit instituted or conducted by one not entitled to practice are a nullity, and if appropriate steps are timely taken the suit may be dismissed, a judgment in the cause reversed, or the steps of the unauthorized practitioner disregarded. See *Bennie* v. *Triangle Ranch Co.,* 73 Colo. 586, 216 P. 718 (1923); *Niklaus* v. *Abel Construction Co.,* 164 Neb. 842, 83 N.W. 2d 904 (1957); *Landis* v. *Superior Ct.,* 232 Cal. App. 2d 548, 42 Cal. Rptr. 893 (1965); *City of Downey* v. *Johnson,* 69 Cal. Rptr. 830 (263 Cal. App. 2d 775) (1968); *Stevens* v. *Jas. A. Smith Lumber Co.,* 54 S.D. 170, 222 N.W. 665 (1929); *Duysters* v. *Crawford,* 69 N.J.L. 229, 54 A. 823 (1903); *Hazard* v. *Phoenix Woodworking Co.,* 78 N.J. Eq. 568, 80 A. 456 (1911); *Maso Holding Corp.* v. *Einstein,* 17 N.Y.S. 2d 655 (1939); *Goldstein* v. *Marriott,* 14 Pa. D. & C. 635 (1929), followed in *Winters* v. *Sheporwich,* 83 Pa. D. & C. 484 (1952); *Colton* v. *Oshrin,* 155 Misc. 383, 278 N.Y.S. 146 :1934); *Anderson* v. *Coolin,* 27 Idaho 334, 149 P. 286 (1915); *Application of County Collector,* 1 Ill. App. 3d 707, 274 N.E. 2d 164 (1971); *Leonard* v. *Walsh,* 73 Ill. App. 2d 45, 220 N.E. 2d 57 (1966). See 7 C.J.S. 725, Attorney and Client, § 16b. The question was raised in *Goldstein* by a motion by the adverse party to strike the complaint. In *Stevens,* it was raised by the plaintiff's motion to strike an answer signed only by nonresident attorneys. In *Colton,* where the court said that prejudice was to be conclusively presumed, the question was presented by the adverse party's motion for mistrial. In *City of Downey* v. *Johnson* and *Application of County Collector,* the question was raised by the appellate court. In *North Laramie Land Co.* v. *Hoffman,* 27 Wyo. 271, 195 P. 988 (1921), it was held that the adverse party might properly move to strike a petition signed only by nonresident attorneys not admitted to practice in the state. See also *Bradley* v. *Sudler,* 172 Kan. 367, 239 P. 2d 921 (1952), 174 Kan. 293, 255 P. 2d 650 (1953).

On the other hand, it has been held that if and when a nonresident attorney, not licensed to practice in the state where an action is pending, seeks to practice in that action, the matter of his qualification will then be addressed to the discretion of the trial court, *State Bar of Texas* v. *Belli,* 382 S.W. 2d 475 (Texas 1964), and that, unless a party in interest in the particular case presents the question of the disqualification of a nonreisdent attorney to appear as counsel for an adverse party, his entitlement to practice before the court will be presumed and the question of his disqualification waived. *Walker* v. *Walker,* 123 So. 2d 692 (Fla. Ct. App. 1960). See also, *Freeling* v. *Tucker,* 49 Idaho 475, 289 P. 85 (1930). Whichever view we might take of the situation, it only seems logical that an adverse party who could question the authority of the attorney to represent his opponent can also, to the same extent, question the authority of that attorney to practice in the state, or the particular court in which the litigation is pending, insofar as that case is concerned. We have no hesitancy in saying that petitioners' challenge to Cox's participation in the trial was appropriately and timely made in the trial court.

But it is contended by respondents that certiorari is not available as a remedy to review the action of the trial court in this regard, and they have moved to dismiss the petition for that reason, saying that there are other adequate remedies. Among those suggested are appeal from any eventual judgment against petitioners, complaint to the Supreme Court Committee on Professional Conduct, and prosecution for violation of Ark. Stat. Ann. § 25-101 et seq. (Repl. 1962).

It is true that these and other remedies might have been appropriate at the instance of the proper party, if the facts should justify such actions. Petitions seeking judicial action against persons charged with the unauthorized practice of law have been entertained by the courts when filed by a local bar association or one of its committees or when presented on behalf of the state bar or one of its committees. 7 Am. Jur. 2d 103, Attorneys at Law, § 89. See *Arkansas Bar Association* v. *Union National Bank of Little Rock,* 224 Ark. 48, 273 S.W. 2d 408. It seems well

settled that unauthorized practice of law, at least by court appearances, is an unlawful intrusion and usurpation of the function of an officer of the court, and constitutes a contempt of any court in which or under whose authority or sanction the unauthorized person pretends to act. *Bessemer Bar Association* v. *Fitzpatrick,* 239 Ala. 663, 196 So. 733 (1940). See also, *Freeling* v. *Tucker,* 49 Idaho 475, 289 P. 85 (1930); *New Jersey Photo Engraving Co.* v. *Schonert and Sons,* 95 N.J. Eq. 12, 122 A. 307 (1923); *State* v. *Barlow,* 131 Neb. 294, 268 N.W. 95, 132 Neb. 166, 271 N. W. 282 (1936). While the pertinent authorities make it quite clear that contempt proceedings may be instituted by an interested bar association, or one of its committees, it does not seem that the right of an adverse litigant to initiate contempt procedures in such cases is so widely recognized. But there is respectable authority that the courts will not resort to this drastic remedy unless there is no other efficient remedy available and there is an evident need for summary action to protect the public and the jurisdiction of the court. See 7 C.J.S. 726, Attorney and Client, § 16c and cases cited. In any event, this remedy would undoubtedly be inadequate for petitioners, because it seems unlikely that punishment for contempt would be imposed after their motion to strike had been denied by the court in which the case was to be tried.

We have approved the granting of injunctive relief at the suit of the state bar association. See *Arkansas Bar Association* v. *Union National Bank,* supra; *Beach Abstract & Guaranty Co.* v. *Bar Association of Arkansas,* 230 Ark. 494, 326 S.W. 2d 900. This is generally accepted as a proper form of relief, particularly where class actions are involved. See *Conway-Bogue Realty Co.* v. *Denver Bar Assn.,* 135 Colo. 398, 312 P. 2d 998 (1957); *Hexter Title & Abstract Co., Inc.* v. *Grievance Committee, 5th Cong. Dist., State Bar of Texas,* 142 Tex. 506, 179 S.W. 2d 946, 157 A.L.R. 268 (1944); Ann., 90 A.L.R. 2d 63, 14 A.L.R. 359.[1] Here again the suitability

---

[1] But see, *The State Bar of Texas* v. *Belli,* 382 S.W. 2d 475 (Tex. 1964), where it was held that injunctive relief would not be granted at the suit of the state bar against an individual nonresident attorney who was not then participating or offering to participate in the trial of a case in the forum state.

and adequacy of this relief to an individual litigant to prevent his adversary from utilizing, as an attorney, a person not properly authorized to practice in the court wherein the litigation is pending are not so well recognized and are highly questionable, to say the least. This remedy is, generally speaking, an equitable one lying within the jurisdiction of our chancery courts. *Harrison* v. *Knott,* 219 Ark. 565, 243 S.W. 2d 642, 28 A.L.R. 2d 405; *Kennedy, ex parte,* 11 Ark. 598. The undesirability of one court's interfering with proceedings pending in another of concurrent or coordinate jurisdiction and equal dignity, as a matter of comity, if not of jurisdiction, would seem to foreclose resort by petitioners to this form of remedy, even if it were otherwise available to them. See *Askew* v. *Murdock Acceptance Corp.,* 225 Ark. 68, 279 S.W. 2d 557; *Butt* v. *Southwestern Distilled Products, Inc.,* 199 Ark. 750, 135 S.W. 2d 857; *Wasson* v. *Dodge,* 192 Ark. 728, 94 S.W. 2d 720; *Wright* v. *LeCroy,* 184 Ark. 837, 44 S.W. 2d 355. See also, *Doss* v. *Taylor,* 244 Ark. 252, 424 S.W. 2d 541.

Quo warranto on the relation of the proper authority has been found to be a proper vehicle for inquiry into the right of one who engages in the practice of law in a state, on the bases that this ancient writ is a demand by the state upon that individual to show by what right he exercised that privilege or franchise, and that unauthorized practice is a usurpation of an office or franchise. *State* v. *Perkins,* 138 Kan. 899, 28 P. 2d 765 (1934). We have recognized the writ as appropriate to prevent the unauthorized enjoyment of an office or franchise. *Moody* v. *Lowrimore,* 74 Ark. 421, 86 S.W. 400; *State* v. *Evans,* 3 Ark. 585, 36 Am. Dec. 468. It does not seem, however, that this writ could properly be invoked by petitioners. *State* v. *Jones,* 194 Ark. 445, 108 S.W. 2d 901; *Moody* v. *Lowrimore,* supra. It is intended, in such cases, only to subserve the interest and guard the rights of the whole community, and not private rights. *Caldwell, Admr.* v. *Bell and Graham,* 6 Ark. 227. If it could be invoked by petitioners, it may well have been rendered ineffective in these circumstances by our decision in *Schirmer* v. *Light,* 222 Ark. 693, 262 S.W. 2d 143. Even if available, quo warranto is not

a remedy which excludes resort to other remedies, such as certiorari. *Howell* v. *Howell*, 213 Ark. 298, 208 S.W. 2d 22.

Resort to disciplinary proceedings against attorneys who associated Cox would certainly afford no remedy to petitioners, even if it were indicated. It is at least doubtful that Cox is subject to this action in Arkansas, even if the circumstances warranted it. Disciplinary action, however, is for the purpose of protecting the rights of the public in general and maintaining the public confidence in the bar, rather than protection of private rights or for inflicting punishment for a criminal offense. *In re Silverstein's Case*, 108 N.H. 400, 236 A. 2d 488 (1967). Resort to criminal prosecution would only result in punishment of a violator but would accomplish nothing insofar as the participation of Cox in the trial is concerned, even if he should eventually be found guilty.

Certiorari cannot ordinarily be utilized as a substitute for appeal. No appeal from the present order would seem to be available until a final judgment against petitioners had been entered. *State* v. *Nelson*, 246 Ark. 210, 438 S.W. 2d 33. This does not mean, however, that actions of trial courts during the course of an action are not subject to review, in a proper case, by a court having supervisory jurisdiction, or that, in the exercise of that jurisdiction, resort may not be had to mandamus, prohibition or certiorari where appellate remedy is unavailable or inadequate. *State* v. *Nelson*, supra. Still, neither of these writs may be used to control the discretion of a trial court, correct its erroneous action, review findings of fact, correct an abuse of discretion, or review a finding or an erroneous conclusion drawn from the facts, except in matters going to the jurisdiction of the inferior tribunal, where there is a remedy by appeal. *State* v. *Nelson*, supra; *North Little Rock Transportation Co.* v. *Sangster*, 210 Ark. 294, 195 S.W. 2d 549; *Sharum* v. *Meriwether*, 156 Ark. 331, 246 S.W. 501; *Howell* v. *Howell*, supra; *Fowler* v. *McKennon*, 45 Ark. 94. See also, 14 Am. Jur. 2d 830, 831, Certiorari, §§ 64, 65, 66; 14 Am. Jur. 2d 782, Certiorari, § 5.

The efficacy of the remedy by appeal after Cox had fully particpated in the trial is at least open to doubt. If it is available to petitioners, certiorari, in a court having supervisory jurisdiction, would still lie to quash a judgment which is void on its face, or to control the actions of an inferior tribunal which is proceeding illegally where no other mode of review has been provided. *Reed* v. *Bradford,* 141 Ark. 201, 217 S.W. 11; *State* v. *Nelson,* supra; *McCain* v. *Collins,* 204 Ark. 521, 164 S.W. 2d 448. Petitioners argue that the circuit court was proceeding illegally. It can be argued, with some force, that the court's order was void for want of jurisdiction or was in excess of its jurisdiction. The question is treated as jurisdictional in some states. See, e.g., *Bradley* v. *Sudler,* 172 Kan. 367, 239 P. 2d 921 (1952), 174 Kan. 293, 255 P. 2d 650 (1953). See also, *Ebeling* v. *Continental Illinois National Bank & Trust Co. of Chicago,* 272 Cal. App. 2d 724, 77 Cal. Reptr. 612 (1969); *Herndon* v. *Lee,* 281 Ala. 61, 199 So. 2d 74 (1967); *Leonard* v. *Walsh,* 73 Ill. App. 2d 45, 220 N.E. 2d 57 (1966); *City of Downey* v. *Johnson,* 263 Cal. App. 2d 775, 69 Cal. Rptr. 830 (1968).

In *State* v. *Nelson,* 246 Ark. 210, 438 S.W. 2d 33, we quashed, on certiorari, an order of a chancery court appointing a master on the ground that the court had proceeded illegally in that the appointment was not only premature but too comprehensive in scope. In *Howell* v. *Howell,* supra, we vacated divorce decrees as void, holding that they were rendered by a person who was neither a judge de jure nor de facto, because of the invalidity of an act purporting to create a second division of a chancery circuit. In doing so, we actually treated an appeal as a petition for certiorari. Our language there is rather appropriate to this situation. We said:

> The right of a supervising court to deal with a particular proceeding in a manner consistent with justice and to thereby expeditiously dispose of issues is unquestioned where recourse to the procedure is not prejudicial to one who is not immediately before the appellate court and where there is no statutory or constitutional impediment. If the result arrived at is the only one that in any event could be reached,

the party indirectly affected is not injured. To this end appeal may be treated as certiorari. The writ may not be used as a substitute for appeal. It is insufficient because only the face of the record and matters of which the appellate court takes judicial notice may be considered. But it does not follow that an appeal cannot be treated as certiorari; and this discretion to convert and to apply practical processes arises in those cases where through inadvertence or a lack of procedural understanding the wrong course has been pursued where the judgment or decree, however just and free from error, cannot stand because it does not in fact have judicial support.

The disposition we make of this case will render it unnecessary for us to actually decide that certiorari is proper in this instance. It is the only remedy invoked here by petitioners, and we will apply its intrinsic limitations on our review. Without actually deciding whether appeal is the proper remedy and treating the matter as if certiorari at this stage of the proceedings would be appropriate, we decide this case, as we did *Stevenson* v. *McDonald,* 77 Ark. 208, 91 S.W. 300, on the basis that petitioners are not entitled to relief by certiorari on the record presented. We find that the circuit court was not, on the face of the record, without jurisdiction to enter the order permitting Cox to proceed in this case and did not act in excess of its jurisdiction or proceed illegally in granting this permission. See *State* v. *Nelson,* supra. In this connection, it should be emphasized that, in denying petitioners' motion to strike, the court only entered Cox's name as attorney of record "to be associated by Mobley and Smith * * * and to assist in all phases of trying the herein cause of action."

The narrow question presented here, then, is whether the Circuit Court of Pope County had authority to permit a nonresident attorney, not licensed to practice in Arkansas, to participate in the trial of this case in that court, representing a litigant in association with an attorney who is a resident licensed to practice, and regularly engaged in the practice of, law in this state,

even though the nonresident attorney has, in similar circumstances, engaged in the trial, or preparation for trial, or settlement negotiations of numerous other cases in Arkansas. We hold that it did.

Limiting our examination to the face of the record in this proceeding does not mean that we inspect only the pleadings and the court's order. The record in a case such as this includes such pertinent matters as the answer of Cox to petitioners' interrogatories, admissions contained in his affidavit filed in the circuit court, the official docket sheet of the circuit court showing enrollment of Cox in the court and his payment of a fee of $1.00 in accordance with Ark. Stat. Ann. §§ 25-108—110 (Repl. 1962). Where the evidence adduced is pertinent to the determination of the lower tribunal's authority to take the action questioned, it is a part of the record. *Stevenson* v. *McDonald*, 77 Ark. 208, 91 S.W. 300; *McCain* v. *Collins*, 204 Ark. 521, 164 S.W. 2d 448.

Petitioners contend that Ark. Stat. Ann. § 25-108, et seq., insofar as applicable here, should be construed to be only a codification of the common law admission pro hac vice, i.e., admission of a nonresident attorney for the purpose of trial of a particular case only. As such, they say, it is applicable only in an isolated instance and cannot be construed to permit such an extensive or systematic practice as Cox has conducted in Arkansas, and this court should find that, because Cox has used the statute as a cloak for an extensive unlicensed practice of law in Arkansas, he should not be permitted to proceed in this case. In the alternative, only if we cannot so find, petitioners ask that we declare Ark. Stat. Ann. § 25-108, et seq., unconstitutional as a legislative invasion of the sphere of the judicial branch and contrary to Amendment 28 of the Arkansas Constitution, as well as a violation of Article II, §§ 3 and 18, of the Arkansas Constitution and the Fourteenth Amendment to the United States Constitution. We find no basis for the relief sought by petitioners, even if we concede that their construction of the statutes is correct, and we find no merit in their attack on the constitutionality of the statutes. In order to approach the matters raised

by petitioners, we find it necessary to treat the statutes, and their status, effectiveness and function without considering each point severally.

Amendment 28 certainly put to rest for all time any possible question about the power of the courts to regulate the practice of law in the state. There can be no doubt that the power of the judicial department, acting through this court, is, in this respect, exclusive and supreme under this amendment, if the power was not already inherent in the courts. This does not mean, however, that adoption of this amendment had the effect of invalidating every act of the General Assembly bearing upon the subject, particularly those passed prior to the effective date of the amendment, if they are not necessarily in irreconcilable conflict with or repugnant to the amendment. An existing statute is superseded by a subsequent constitutional amendment only when there is an irreconcilable conflict or the statute is necessarily repugnant to the new constitutional provision. *Vance v. Johnson,* 238 Ark. 1009, 386 S.W. 2d 240; *Priest v. Mack,* 194 Ark. 788, 109 S.W. 2d 665; *Polk County v. Mena Star Company,* 175 Ark. 76, 298 S.W. 1002; *Kirk v. High,* 169 Ark. 152, 273 S.W. 289, 41 A.L.R. 782; *Hodges v. Dawdy,* 104 Ark. 583, 149 S.W. 656.[2] See also, *Henley v Goggin,* 241 Ark. 348, 407 S.W. 2d 732; *Lewelling v. Board of Directors of Mansfield School District,* 240 Ark. 237, 398 S.W. 2d 665; *Cone v. Garner,* 175 Ark. 860, 3 S.W. 2d 1. A basic and fundamental rule applicable in consideration of the effect of both statutes and constitutional amendments

---

[2]But see, *W. R. Wrape Stave Company* v. *Arkansas State Game and Fish Commission,* 215 Ark. 229, 219 S.W. 2d 948, wherein it was held that since the purpose of Constitutional Amendment 35, making the State Game and Fish Commission an independent constitutional agency of government, seemed to have been to cover the whole subject and to either provide, or leave to the commission, methods for reaching its ends, the amendment superseded all prior legislative acts, whether directive or restrictive in nature. Specific conditions precedent for suits in eminent domain by the commission were the subject of the act there held unconstitutional. Although the amendment provided that the power of eminent domain be exercised in the same manner as provided for exercise of the power of the State Highway Commission, the opinion was not premised on this specific language. Furthermore, there is no mention in the opinion of the sentence: "All laws now in effect shall continue in force until changed by the Commission."

is that repeal by implication is not looked upon with favor and is never allowed by the courts except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together. See *Lybrand* v. *Wafford,* 174 Ark. 298, 296 S.W. 729.

Since this court has not taken any action to regulate the extension of the right of comity to a nonresident attorney, and the pertinent sections of the statute are not necessarily repugnant to Amendment No. 28, we hold that the particular sections of the statute involved are not unconstitutional, insofar as they apply to the facts in this case. Statutes which provide a penalty for unauthorized practice of law by a nonresident of the forum state have been held to be cumulative to the powers of the courts to punish. *Bessemer Bar Association* v. *Fitzpatrick,* 239 Ala. 663, 196 So. 733 (1940). It has also been said that statutes relating to the practice of law are merely in aid of, but do not supersede or detract from the power of the judicial department to define, regulate and control the practice of law, and that the legislative branch may not, in any way, hinder, interfere with, restrict or frustrate the powers of the courts. *Wallace* v. *Wallace,* 255 Ga. 102, 166 S.E. 2d 718 (1969); *State* v. *Perkins,* 138 Kan. 899, 28 P. 2d 765 (1934); *Automobile Club of Missouri* v. *Hoffmeister,* 338 S.W. 2d 348 (Mo. Ct. App. 1960); *Hoffmeister* v. *Tod,* 349 S.W. 2d 5 (Mo. 1961); *Meunier* v. *Bernich,* 170 So. 567 (La. Ct. App. 1936); *State* v. *Barlow,* 131 Neb. 294, 268 N.W. 95 (1936). See also, *Clark* v. *Austin,* 340 Mo. 467, 101 S.W. 2d 977 (1937); 7 Am. Jur. 2d 44, Attorneys at Law, § 2. The Court of Appeals for the Eighth Circuit has appropriately held that the courts may, and frequently do, honor implementing legislation, but are not bound to do so. *Feldman* v. *State Board of Law Examiners,* 438 F. 2d 699 (1971). *See also, Martin* v. *Davis,* 187 Kan. 473, 357 P. 2d 782 (1960); *Meunier* v. *Bernich,* supra.

In subsequent legislation, Act 438 of 1961 [Ark. Stat. Ann. §§ 25-215—217 (Repl. 1962)], the General Assembly has given specific recognition to the principle by declaring that act to be in aid of and subordinate to the

right of this court to regulate and define the practice of law and to prevent and prohibit unauthorized or unlawful practice thereof by appropriate rules, orders and penalties. We seem definitely to have chosen to recognize and apply certain statutes which are not necessarily inconsisent with, or repugnant to, court rules, and do not hinder, interfere with, frustrate, pre-empt or usurp judicial powers, at least when the statutes were, at the time of enactment, clearly within the province of the legislative branch and when the courts have not acted in the particular matter covered by the statute. *Arkansas Bar Assn.* v. *Union National Bank,* 224 Ark. 48, 273 S.W. 2d 408. While the constitutionality of the act now before us was not involved in *Letaw* v. *Smith,* 223 Ark. 638, 268 S.W. 2d 3, this court applied it, as then written, as a valid statute. Upon adoption of "Rules Regulating Professional Conduct of Attorneys at Law," April 24, 1939, soon after the adoption of Amendment 28, this court provided in Rule IX that those rules should not be deemed exclusive of, but as supplemental to, the statutes of the State of Arkansas and the Committee (now Supreme Court Committee on Professional Conduct) may invoke the statutes or proceed under those rules if it should elect to do so. We have, however, held that statutes in conflict with rules adopted by this court under authority given by Amendment 28 were superseded by the rules. *Armitage* v. *Bar Rules Committee,* 223 Ark. 465, 266 S.W. 2d 818. But, we clearly indicated that we would recognize and apply a statute making certain advertising practices unlawful with reference to the practice of law in *Arkansas Bar Assn.* v. *Union National Bank,* supra, saying:

> In many jurisdictions, as in this state, the judiciary has on occasions apparently given approval to certain enactments by the legislative body, but these enactments are considered to be in aid of the judicial prerogative to regulate the practice of law and not to be in derogation thereof.

When viewed in the light of the narrow question presented here, the statute constitutes little more than a recognition of the usual practice of permitting an at-

torney, licensed and in good standing in a sister state, to appear and participate in the trial or argument of a particular case. The granting of such permission, without or even in spite of a statute, seems to be within the inherent power of the courts and is a rather general practice. See *Freeling* v. *Tucker*, 49 Idaho 475, 289 P. 85 (1930); *State* v. *Perkins*, 138 Kan. 899, 28 P. 2d 765 (1934); *Anderson* v. *Coolin*, 27 Idaho 334, 149 P. 286 (1915); 7 C.J.S. 723, Attorney and Client, § 15, 7 Am. Jur. 2d 48, Attorneys at Law. This practice extends comity as a courtesy, not as a right. *Mason* v. *Pelkes*, 57 Idaho 10, 59 P. 2d 1087 (1936). A lawyer who does not confine his practice to the limits of such an admission is subject to appropriate state action for unauthorized practice. *Sanders* v. *Russell*, 401 F. 2d 241 (5th Cir. 1968).

The state has legitimate interests to be weighed in considering pro hac vice admissions in order to maintain a high level of professional ethics, to assure a high quality of representation in the courts and to protect the economic interests of the regularly licensed resident attorneys of the state. In order to properly protect these interests and to expedite the administration of justice, the courts are concerned with the qualifications and conduct of counsel, their availability for service of papers and amenability to disciplinary proceedings. But these interests do not justify an arbitrary numerical limitation on the number of such appearances by an attorney in the state, where the nonresident attorney associated with resident counsel is not involved in a general practice of law, particularly where the nonresident practitioner has developed some degree of expertise in the particular field of litigation in which he is engaged. *Sanders* v. *Russell*, supra. See also, *Meunier* v. *Bernich*, 170 So. 567 (La. Ct. App. 1936); *Freeling* v. *Tucker*, supra; *Hulse* v. *Criger*, 363 Mo. 26, 247 S.W. 2d 855 (1952); 7 C.J.S. 712, Attorney and Client, § 6 a and c.

As we view the matter, § 25-108, at least as it now reads and as applied in the case before us, is not in conflict with Amendment 28 or any rule promulgated by this court. If Cox attempts to participate in other cases

in reliance upon his "enrollment" in connection with this case, quite a different matter will be presented. Insofar as this case is concerned, he has complied with the terms and conditions imposed by the court in which the case is pending, and we need not consider the effect of Ark. Stat. Ann. § 25-111, if indeed it has survived the rules of this court governing admission to the bar and the 1955 amendment to Ark. Stat. Ann. § 25-108.

Not only are we unable to say that Ark. Stat. Ann. § 25-108 is unconstitutional for conflict with Amendment 28, we are also unable to say that it is invalid under either Section 3 or 18 of Article II of the Constitution of Arkansas, or the Fourteenth Amendment to the United States Constitution.

It is true that the right to practice law is a privilege in the nature of a franchise. *Martin* v. *Davis,* 187 Kan. 473, 357 P. 2d 782 (1960); *State* v. *Perkins,* 183 Kan. 899, 28 P. 2d 765 (1934); *Gordon* v. *Clinkscales,* 215 Ga. 813, 114 S.E. 2d 15 (1960); *In re Bailey,* 30 Ariz. 407, 248 P. 29 (1926); *Freeling* v. *Tucker,* supra; *New Jersey Photo Engraving Company* v. *Schonert & Sons,* 95 N.J. Eq. 12, 122 A. 307 (1923); *In re Co-operative Law Company,* 198 N.Y. 479, 92 N.E. 15, 139 A.S.R. 839 (1910). See *Wernimont* v. *State,* 101 Ark. 210, 142 S.W. 194. It is not a matter of grace. *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957); *Raffaelli* v. *Committee,* 7 Cal. 3d 288, 101 Cal. Rptr. 896, 496 P. 2d 1264 (1972). But it is not an absolute, natural or constitutional right. *Wernimount* v. *State,* supra; *Gordon* v. *Clinkscales,* supra; *West Virginia State Bar* v. *Earley,* 144 W. Va. 504, 109 S.E. 2d 420 (1959); *In re Bailey,* supra.

The right to practice in state courts is not a privilege or immunity under the Fourteenth Amendment to the United States Constitution. *In re Lockwood,* 154 U.S.116, 14 S. Ct. 1082, 38 L. Ed. 929 (1894); *Bradwell* v. *Illinois,* 83 U.S. 130, 21 L. Ed. 442 (1872). See also, *Starr* v. *State Board of Law Examiners,* 159 F. 2d 305 (7th Cir. 1947); *Ruckenbrod* v. *Mullins,* 102 Utah 548, 133 P. 2d 325 (1943). It is only when there is no rational

basis for denying the right or privilege to practice in a state or there is arbitrary action or invidious discrimination by state officers excluding one from the practice that the "due process" and "equal protection" clauses of the Fourteenth Amendment come into play. *Schware* v. *Board of Bar Examiners,* supra; *Konigsberg* v. *State Bar of California,* 353 U.S. 252, 1 L. Ed. 2d 810, 77 S. Ct. 722 (1957). See also, *Martin* v. *Davis,* 187 Kan. 473, 357 P. 2d 782 (1960), appeal dism. sub nom *Martin* v. *Walton,* 368 U.S. 25, 82 S. Ct. 1, 7 L. Ed. 2d 5 (1961). But it was recognized in *Konigsberg,* as it had always been, that states are free to determine who may practice in their courts, so long as the power to do so is not exercised in an arbitrary or discriminatory manner. See also, *Feldon Saier* v. *State Bar of Michigan,* 293 F. 2d 756 (6th Cir. 1961); *Starr* v. *State Board of Law Examiners,* 159 F. 2d 305 (7th Cir. 1947). It was acknowledged in *Theard* v. *United States,* 354 U.S. 278, 77 S. Ct. 1274, 1 L. Ed. 2d 1342 (1954), that the limits of review of state action in such matters were set in *Konigsberg* and *Schware,* and that they were narrow. In dismissing an appeal from *Martin* v. *Davis,* supra, wherein rules requiring that a Kansas attorney who regularly practiced in another state must associate local counsel before appearing in the courts of Kansas were held not violative of the equal protection and due process clauses, the Supreme Court of the United States found a want of a substantial federal question. The court found the rules, both on their face and as applied, within the competence of the Supreme Court of Kansas and not beyond the allowable range of state action under the Fourteenth Amendment. The United States Supreme Court said that the fact that the rules may result in "incidental individual inequality" did not make them offensive to the Fourteenth Amendment. *Martin* v. *Walton,* supra. This seems to be a complete answer to petitioners' argument that somehow nonresident attorneys, who presumably have satisfied the courts of their own states as to competence and moral qualifications, are favored in Arkansas. Whatever deficiencies exist under the statute may certainly be remedied by "terms, conditions and requirements prescribed by rules of practice" of the individual courts, and if they are not, the rule-making power of this court may be invoked.

Since the practice of law is a profession licensed as a privilege or franchise and its members officers of the court and a necessary arm of the judicial system, it is not a natural right, the regulation of which is limited by the state constitution. See *Gosnell* v. *State*, 52 Ark. 228, 12 S.W. 392. There is certainly no indication that the statute and the action of the court in this case are in any way discriminatory and that the same rights and privileges accorded Cox thereunder would not have been accorded to all others similarly situated upon the same terms. In denying the motion to strike, the circuit judge found that it had been the custom and practice of that court to allow nonresident attorneys to be admitted for a particular case.

We find no merit in petitioners' arguments on this point and nothing in Ark. Stat. Ann. § 25-108 or the circuit court's action in this case which violates either the state or federal constitution.

The writ is denied.