R. N. BROWN, et ux *v.*
Warren E. WOOD, Judge, et al

74-36                                        516 S.W. 2d 98

Opinion delivered November 18, 1974
[Rehearing denied December 23, 1974.]

*Oscar Fendler*, for petitioners.

*Smith, Williams, Friday, Eldredge & Clark*, by: *W. A. Eldredge, Jr.* and *J. D. Watson*, for respondents.

FRANK HOLT, Justice. A nonresident attorney, James S. Cox, was enrolled by the Pulaski County Circuit Court in an ex parte proceeding permitting him to appear there as an attorney of record for petitioners in the case entitled R. N. Brown, et ux, v. Harold Chakalas, M.D. The trial court granted defendant's subsequent motion to strike the previous order of enrollment. By a petition for certiorari and mandamus, the petitioners now seek an order reinstating Cox to his former status in the case. This method of appellate review is not in issue. Petitioners first assert that the trial court acted beyond its scope of authority in striking its previous order of enrollment which was pursuant to Ark. Stat. Ann. § 25-108 (Repl. 1962). We find no merit in this contention.

The statute reads:

Nonresident attorneys at law of record shall be allowed to practice law in all the courts of this state of equal jurisdiction of the court or courts to which they have been admitted to practice and are members of the bar in good standing in the state of their residence, *under such terms aad conditions and requirements as may be prescribed by the rules of practice of any court in which any such nonresident attorney at law seeks to practice.* (Emphasis ours.)

Petitioners argue that after a nonresident attorney demonstrates that he is admitted to practice in a court of equal jurisdiction and is a member of the bar in good standing in the state of residence, as here, the court must enroll the attorney after compliance with any reasonable rules and regulations prescribed by the enrolling court. In support of this argument the petitioners cite Ark. Stat. Ann. § 25-111 (Repl. 1962) which reads in pertinent part:

> A nonresident attorney at law, enrolled under this act (§§25-108 - 25-111), shall be and remain a member of the bar of the court in which he has been enrolled and shall not again be required to be enrolled in the same court, . . . .

This evinces the legislative intent, say petitioners, that the practice of law in Arkansas by nonresident attorneys, once enrolled, is unrestricted as to "frequency of practice." The first answer to these arguments is that the Supreme Court has vested in it the power to regulate the practice of law in this state regardless of a statute. Ark. Const. (1874), Amendment 28. The next answer is that we held adversely to this contention in the recent case of *McKenzie* v. *Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973), where Cox was also the enrollee. There we said:

> When viewed in the light of the narrow question presented here, the statute constitutes little more than a recognition of the usual practice of permitting an attorney, licensed and in good standing in a sister state to appear and participate in the trial or argument of a particular case. The granting of such permission, without or even in spite of a statute, seems to be within the inherent power of the court, and is a rather general practice.

We further said:

> . . . . [S]tatutes relating to the practice of law are merely in aid of, but do not supersede or detract from the power of the judicial department to define, regulate and control the practice of law, and that the legislative branch

may not, in any way, hinder, interfere with, restrict or frustrate the powers of the courts.

Appellant next asserts that even if the trial court had the authority to strike Cox's enrollment order, it grossly abused its discretion in doing so. Although this court has not exercised its inherent power by promulgating rules as to the practice of law in our state by nonresident attorneys, our local courts, in the absence of any rule by this court, certainly have the inherent authority to formulate reasonable rules and regulations which allow or prevent a nonresident attorney from practicing law in an Arkansas court. *McKenzie* v. *Burris, supra;* and *Letaw* v. *Smith, Chancellor,* 223 Ark. 638, 268 S.W.2d 3 (1954). The circumstances in each case might necessitate that the court "properly protect" a legitimate interest of the public as well as the individual litigants. In *McKenzie* we mention certain areas where a court may exercise its discretionary authority in considering pro hac vice admissions:

> The state has legitimate interests to be weighed in considering pro hac vice admissions in order to maintain a high level of professional ethics, to assure a high quality of representation in the courts and to protect the economic interests of the regularly licensed resident attorneys of the state. In order to properly protect these interests and to expedite the administration of justice, the courts are concerned with the qualifications and conduct of counsel, their availability for service of papers and amenability to disciplinary proceedings. But these interests do not justify an arbitrary numerical limitation on the number of such appearances by an attorney in the state, where the nonresident attorney associated with resident counsel is not involved in a general practice of law, particularly where the nonresident practitioner has developed some degree of expertise in the particular field of litigation in which he is engaged. (Citing cases.)

In the case at bar the petitioners had first consulted with a local law firm which has demonstrated expertise in tort actions. However, this being a medical malpractice case, the firm declined to represent petitioners and referred them to

Cox, a Memphis attorney, who is acknowledged to possess an expertise in this particular phase of law. The referral of an individual to another attorney who has a greater expertise in a particular phase of the law is in keeping with the professional duty of an attorney to make competent legal counsel available to individuals. ABA Code of Professional Responsibility, Canon 2. Cox regularly represents plaintiffs, such as the petitioners, as well as members of the medical profession. Upon consulting with Cox, he accepted their case and, since the statute of limitations was about to run, personally prepared the complaint and delivered it for filing to a Little Rock attorney and associated him in the case. It is unquestioned, as recited in the court's enrollment order, that Cox is "a member in good standing of the bar of Tennessee. . . ."

In striking the ex parte enrollment order, after an evidentiary hearing, the court did so stating: Cox's participation in Arkansas litigation is ever increasing; petitioner Brown employed Cox at his Memphis office; Cox dictated and had the complaint typed there and, since the statute of limitations was about to run, drove to Little Rock where he delivered the pleading to a local attorney for filing; Cox, therefore, associated local counsel with him rather than being associated as co-counsel by local counsel as was done in *McKenzie, supra;* there Cox was enrolled as an associate of local counsel to assist them in all phases of trying the cause of action; such an entry in the present case would be substituting form for substance; Cox is practicing law in Arkansas without being licensed to do so; there are competent licensed attorneys in the state; Cox was currently connected with either four or six cases in Pulaski County; Cox tries lawsuits all over the United States and there is no doubt his commitments for trial in other jurisdictions would conflict with cases set for trial in Pulaski County; it is obvious to the court that numerous matters of procedure could not be cleared through a resident attorney because they would have to be cleared with Cox; concern about the availability of attorneys of record and the court's ability to know that such attorneys speak for all parties concerned with their phase of the case, in relationship to the orderly administration of the court; and Cox forwards files in medical malpractice cases to one Paula

Stone, a lay person in another state, who, for a minimum fee of $500, contacts medical doctors and obtains from them evaluations of the cases and commitments to testify.

Respondents add that interrogatories in two local cases had not been answered by Cox or local counsel associated with him, although the interrogatories were filed in one case two years previously and about five months before the other local case. Cox's testimony is no request for immediate response or any time limit was set which would result in a request for a default judgment. He admits, however, that local counsel are relying upon him for the necessary work in answering the interrogatories. Further, he has "an extremely heavy trial load involving trials all over the country." He testified that he had represented fourteen cases in Arkansas, twelve or thirteen of which went to suit and six of which were in the circuit court of Pulaski County.

We agree with respondent that the burden is upon the petitioners to show that the granting of the motion to strike Cox's enrollment was an abuse of discretion. Indeed, that is a heavy burden. First we observe that the method of review before us, certiorari and mandamus, is not an issue. However, the law is well settled that upon review by certiorari it is essential that there be demonstrated a plain, manifest, clear, great or gross abuse of discretion by a trial court before an appellate court is justified in granting the relief sought. 14 Am. Jr. 2d 787, Certiorari § 10; 14 C.J.S. 174, Certiorari § 30; 14 Am. Jur. 2d 796, Certiorari § 20; and 1 Bailey on Habeas Corpus 738, § 188 (1913). Cf. *State* v. *Nelson, Berry Pet. Co.*, 246 Ark. 210, 438 S.W.2d 33 (1969); and *Ark. State Highway Comm.* v. *Light, Judge*, 235 Ark. 808, 363 S.W. 2d 134 (1962).

As to mandamus, in order to grant the relief sought by petitioners, it is essential for us to hold the trial court was guilty of such a gross abuse of discretion that it may be said to have been so arbitrary that it amounted to a refusal by the trial court to proceed. Otherwise, mandamus will not lie. *Edmondson* v. *Bourland*, 179 Ark. 975, 18 S.W.2d 1020 (1929). This view is widely held and so expressed by the text writers. 55 C.J.S., Mandamus, § 63. When the findings of the court,

in the case at bar, are tested by the foregoing rules of law governing certiorari and mandamus, we cannot say the heavy burden was met by the petitioners.

There was a very substantial basis for the court's concern about the extent of Cox's practice in Arkansas, and elsewhere, and the potential effect of this extensive practice on the ability of the judge to control and expedite his docket as well as the progress of cases in which Cox participated without sacrificing the interest of litigants, witnesses and other participants in his court. We must accord the trial court the right to take into consideration the possibility that Cox might not be able to appear at trial, pre-trial unavailability, unavailability for discipline in order to require him to answer interrogatories, his being unavailable or present to conduct a hearing on a motion, availability when depositions were scheduled, and that his nonavailability to any one of these instances would work a hardship on Arkansas residents in whose case he is enrolled as well as other residents of the state who have cases pending in the same court. We emphasize that comity is a courtesy and not a right.

Neither can we say that petitioners have been prejudiced since nothing is presented which indicates that the Bar of Arkansas is inadequate with respect to trial advocacy and, consequently, the participation of Cox, in the case at bar, is absolutely essential to adequate presentation of their claim.

The question is not what this court or any member of it would have held on the question or whether we think the court in the exercise of its sound discretion should have reached a different result. The question is whether the abuse of that discretion, if abused, is plain, clear, manifest, gross, great, or serious. This means that the abuse must be such that the action of the trial court was arbitrary and capricious, or at least that the error in the discretionary action is so apparent as to be without argument. We certainly cannot say on the record as a whole before us that the trial court grossly, arbitrarily and capriciously abused the discretionary authority which is properly accorded to him.

The case at bar, together with *McKenzie* v. *Burris, supra,* convinces us that the time has come when appropriate

regulations should be promulgated concerning nonresident attorneys by comity. In this connection we invite suggestions from the bench and bar of the State of Arkansas.

Writs denied.

BROWN, JONES and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. As I read the record in this case the lawyers representing Harold Chakales, M.D., were not attacking Mr. Cox's ability to represent his clients but were complaining because he was too successful in representing them and consequently complained that he had received $111,000 in fees from malpractice settlements or payments made by one liability insurance company. I submit that Mr. Cox has appeared in no more lawsuits than did Justice Thurgood Marshall for litigants in this State and I have never heard anybody suggest that Thurgood Marshall was involved in the unauthorized practice of law. Furthermore, Wils Davis of Memphis, Tennessee,([1]) regularly appeared in litigation before the trial courts of this State and I never heard it contended that he was involved in the unauthorized practice of law. Thus in view of past history it appears to me that the trial court was arbitrary in refusing to permit Mr. Cox by comity from participating in the trial of this litigation.

It also appears to me that by preventing Mr. Cox from representing Mr. and Mrs. Brown in this malpractice action we are encouraging the trial courts to give more emphasis to the income protection of local lawyers than we are to the rights of the litigants. The record shows that after consulting with legal counsel Mr. and Mrs. Brown were referred to the law firm of McMath, Leatherman and Woods. Ex-Governor McMath refused to take the case, not because of lack of merit, but because he had considerable business with Dr. Chakales. Henry Woods, Ex-Governor McMath's law partner and a former president of the Arkansas Bar Association, finally suggested to the Browns that they consult Mr. Cox, a Memphis, Tenn. lawyer. Since Mr. Cox, a specialist

---

([1])Mr. Wils Davis was admitted to practice in both Arkansas and Tennessee but Mr. Cox cannot be so admitted under our rules without becoming a resident of Arkansas with the intention to maintain an office in Arkansas.

in medical malpractice, after consultation thought that Mr. and Mrs. Brown had a meritorious claim, I can only conclude that Mr. and Mrs. Brown have a meritorious cause of action that they are entitled to have submitted to a jury for a factual determination. Under these circumstances I challenge any member of the majority or the trial court to come forth with the name of any lawyer in Arkansas that has had any plaintiff success in the medical malpractice field in the trial courts and in persuading physicians and surgeons to break the so-called "conspiracy of silence." Had I been practicing law and had the Browns consulted me, I would have given them the same advice they got when they were referred to Mr. Cox. After all it would appear that the regulation of the practice of the law is for the benefit of the litigants not necessarily for the lawyers. If the regulation turns out in practice to be for only the benefit of the lawyers then we are subject to being chastised for operating a monopoly.

For the reasons stated, I respectfully dissent.