Pamela F. SKOKOS *v.* Honorable Alice S. GRAY

94-952                                                     886 S.W.2d 618

Supreme Court of Arkansas
Opinion delivered November 7, 1994
[Rehearing denied December 5, 1994.*]

*Special Justice Eddie Walker, joins. Special Justice Cathleen Compton, would grant rehearing. Hays and Brown, JJ., not participating.

*Henry Hodges* and *Robert L. Robinson, Jr.,* for petitioner.

*Dodds, Kidd, Ryan & Moore,* by: *Judson C. Kidd*; and *Hollingsworth Law Firm,* by: *P.A. Hollingsworth,* for Theodore Skokos.

*Winston Bryant,* Att'y Gen., by: *Melissa K. Rust,* Asst. Att'y Gen., for respondent.

DAVID NEWBERN, Justice. Pamela F. Skokos seeks a writ of *certiorari* to disqualify the respondent, Chancellor Alice S. Gray, from presiding in divorce proceedings instituted by Ms. Skokos. Judge Gray denied three motions by Ms. Skokos that she recuse. We deny the writ because the decision by a judge whether or not to recuse lies within the judge's discretion, and *certiorari* does not lie to control a judge's discretion. Ms. Skokos also asks that we disqualify an attorney representing Mr. Skokos as well as an attorney *ad litem* appointed to represent the interest of a minor child of the Skokoses. We decline to do so.

### Certiorari

### 1. The Chancellor

In *Gran* v. *Hale,* 294 Ark. 563, 745 S.W.2d 129 (1988), we discussed the writ of *certiorari* and quoted the following from *State* v. *Nelson,* 246 Ark. 210, 438 S.W.2d 33 (1969):

> Certiorari lies to correct proceedings erroneous upon the face of the record when there is no other adequate remedy. It is available in the exercise of superintending control over a tribunal which is proceeding illegally where no other mode of review has been provided. Certiorari lies where there is a want of jurisdiction or an act in excess of jurisdiction which is apparent on the face of the record. It is not available to look beyond the face of the record to

ascertain the actual merits of a controversy, to control discretion, to review a finding upon facts or review the exercise of a court's discretionary authority.

Ms. Skokos does not contend that the Chancellor is acting illegally or without or in excess of her jurisdiction. Rather, she contends we should disqualify the Chancellor pursuant to our superintending authority found in Ark. Const. art. 7, § 4. No case is cited in which we have used the writ of *certiorari* to disqualify a judge. Nor is any case cited from any other jurisdiction in which *certiorari* has been employed to remove a judge in the midst of proceedings being conducted by him or her.

A voluminous record of the divorce proceedings has been presented to us, and Ms. Skokos has cited numerous incidents she contends amount to demonstrations of bias against her by the Chancellor. They include decisions with respect to temporary possession of the marital home, custody of a child, support for Ms. Skokos and the child, and "suit money." They also include instances in which the Chancellor has held one of Ms. Skokos's lawyers in contempt of court for his conduct in her presence. In addition, there is an allegation that the Chancellor erred in declining to disqualify one lawyer representing Ms. Skokos's husband due to his alleged professional relationship with an attorney *ad litem* appointed to represent the minor child of the parties.

Another allegation is that a lawyer for Ms. Skokos informed the Chancellor that he had filed a complaint against her with the Judicial Discipline and Disability Commission having to do with an unrelated case and the Chancellor erroneously overruled a motion to recuse on that ground.

The cases cited by Ms. Skokos in support of her contention that the Chancellor should have recused, *e.g., City of Jacksonville* v. *Venhaus*, 302 Ark. 204, 788 S.W.2d 478 (1990); *Patterson* v. *R.T.*, 301 Ark. 400, 748 S.W.2d 777 (1990); *Rosenzweig* v. *Lofton*, 295 Ark. 573, 751 S.W.2d 729 (1988); *Farley* v. *Jester*, 257 Ark. 686, 520 S.W.2d 200 (1975), were decisions made on appeal.

The only case cited in which we have invoked Ark. Const. art. 7, § 4, is *Robinson* v. *Robinson*, 218 Ark. 526, 237 S.W.2d 20 (1951). In that case we decided an appeal which required us to remand a case to a chancery court. We stated that, pursuant

to our constitutional authority, we were remanding it to a different division from the one which had handled it originally. We said, ". . . we have concluded from an examination of the entire record that in fairness to the chancellor of the Second Division as well as to the parties, the cause should be transferred to the First Division for further proceedings." Although we used the authority of art. 7, § 4, we did so as a part of our appellate review as opposed to using certiorari to oust a judge in the midst of proceedings.

Perhaps the closest we have come to using the writ of *certiorari* in the manner suggested by Ms. Skokos is the case of *Foreman* v. *State*, 317 Ark. 146, 875 S.W.2d 853 (1994). We issued the writ to require a judge to reconsider the setting of an appearance bond. The record demonstrated that no consideration had been given to matters required to be considered by the Trial Court in making that decision. That case is distinguishable from this one in that the appellate remedy there would have been useless because the petitioner would have had to remain incarcerated until tried without proper consideration of his request for release on bond. It was a case in which there was no other remedy or effective means of review.

We have said often and recently that *certiorari* will not be used to "control discretion." *See, e.g., Lupo* v. *Lineberger*, 313 Ark. 315, 855 S.W.2d 293 (1993); *Gran* v. *Hale, supra*. That flat statement was made in *Arkansas State Highway Comm.* v. *Light*, 235 Ark. 808, 363 S.W.2d 134 (1962). We varied from it in *Brown* v. *Wood*, 257 Ark. 252, 516 S.W.2d 98 (1974), in which we stated, ". . . the law is well settled that upon review by certiorari it is essential that there be demonstrated a plain, manifest, clear, great or gross abuse of discretion by a trial court before an appellate court is justified in granting the relief sought." For that statement we cited general authority from encyclopedias and a learned treatise and invited the reader to compare our decisions in *Arkansas State Highway Comm.* v. *Light, supra,* and *State* v. *Nelson, supra.* We repeated the quoted language in *Shorey* v. *Thompson*, 295 Ark. 664, 750 S.W.2d 955 (1988).

In neither the *Brown* case nor the *Shorey* case did we grant the writ. It is apparent that, with the addition of the language about "plain, manifest, clear, great, or gross" abuse, we were

stressing the very heavy burden a petitioner for *certiorari* must bear.

Before concluding our discussion of *certiorari* with respect to the Chancellor's decisions overruling the motions to recuse we should mention a case in which mandamus was issued to disqualify a circuit judge. *Copeland* v. *Huff*, 222 Ark. 420, 261 S.W.2d 2 (1953). There we held that a judge had no choice but to recuse when he was a party to the litigation over which he proposed to preside. We said that mandamus was appropriate because in that circumstance the act of recusal was ministerial only in view of the clear constitutional disqualification of the judge. That, of course, is a far cry from the kind of discretionary ruling of which Ms. Skokos complains.

There are good reasons for the limitations on the writ of *certiorari*. A party could, for example, use a complaint to the Judicial Discipline and Disability Commission as a tactic to force a recusal. Complaints of "patently biased and insupportable rulings" such as we have here could, if we were to allow them to become routine subjects of *certiorari*, cause interminable delays in trials.

■ Our consideration of Ms. Skokos's allegations in response to her petition for *certiorari* will preclude us from considering them again, should there be a later appeal. *Henderson Methodist Church* v. *Sewer Improvement Dist. No. 142*, 294 Ark. 188, 741 S.W.2d 272 (1987); *Bertig Bros.* v. *Independent Gin Co.*, 147 Ark. 581 228 S.W. 392 (1921); Note, 17 Ark. L. Rev. 163 (1963). We will not be precluded, however, from considering in a later appeal matters which transpire in the trial henceforth should the Chancellor persist in her decision not to recuse and should the proceedings continue in the atmosphere which has developed thus far. Without making any direct comment about the Chancellor or counsel or any specific ruling, we offer some observations.

The record before us demonstrates obvious ill will between the Chancellor and counsel which has impeded deciding the case. The parties are still pursuing "temporary" custody of a minor child despite 15 months of hearings, and the case is at a standstill as a result of the *certiorari* petition.

It is clear to us that there is a contest of wills between the Chancellor and counsel. Should it continue, and cause actions which become the subject of a later appeal, perhaps necessitating a reversal and retrial, justice for the parties will to a degree be thwarted and the judicial system will be subjected to unnecessary but justified criticism.

Canon 1 of the Arkansas Code of Judicial Conduct makes it clear that a judge should maintain high standards of conduct to preserve the integrity of the judiciary. Canon 2 requires a judge to avoid the appearance of impropriety, and Canon 3 requires strict impartiality. The preamble to the Model Rules of Professional Conduct points out that a lawyer is a representative of clients, an officer of the legal system, and a public citizen "having special responsibility for the quality of justice." It also provides "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges. . . . While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process." Model Rule 3.5 deals with decorum and provides in subsection (c) that a lawyer shall not "engage in conduct intended to disrupt a tribunal."

These considerations are very important to the judicial process. As officers of the court, lawyers must vigorously pursue their clients' interests, but they must do so with respect for the court. On the other hand, when others lose their composure and depart from professional demeanor, we expect a judge to keep his or hers intact and to assure that the proceedings are conducted in the most dignified manner possible.

### 2. The lawyers

Although Ms. Skokos asks us to disqualify one of the lawyers representing Mr. Skokos as well as an attorney *ad litem* appointed to represent a minor child of the parties, the only argument presented with respect to the two lawyers appears as part of her brief contending that the Chancellor should have recused.

Ms. Skokos's contention is that the attorney *ad litem* is a member of a law firm, one of whose partners is a partner with a lawyer for Mr. Skokos in another firm, and thus there is a disqualifying conflict. The response made to the Chancellor and to us is that the two law firms in question are separate entities and

that the attorney *ad litem* thus has no relationship with Mr. Skokos's lawyer.

We find no independent argument devoted to the authority we may or may not have to declare a lawyer disqualified during proceedings before a trial court. Again, no cases are cited in which an appellate court has done such a thing.

■ Our own research reveals that we have held on appeal that a lawyer and law firm were disqualified, *Burnette* v. *Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990), but absent convincing argument or citation of authority we decline to address the matter in response to a petition for *certiorari*.

In response to a motion by Ms. Skokos, on September 9, 1994, we stayed all proceedings in this matter other than a hearing to be held by the Chancellor on whether she should recuse. Now that the hearing has been held, and we decline to change the result by granting *certiorari*, the stay is lifted.

Writ denied.

HAYS and BROWN, JJ., not participating.

SPECIAL JUSTICE EDDIE H. WALKER, JR., joins in the majority opinion.

GLAZE, J., concurs.

SPECIAL JUSTICE CATHLEEN V. COMPTON dissents.

TOM GLAZE, Justice, concurring. I concur with the majority opinion. Certiorari does not lie to disqualify a judge from hearing a proceeding unless the judge is proceeding illegally, or in want, or in excess, of his or her jurisdiction. No legal authority is cited in support of employing certiorari to remove a judge in the midst of a proceeding and good reasons for rejecting the use of this extraordinary remedy for such purposes are set out in the majority opinion.

Having said the above, I am concerned over the obvious ill will that has arisen between counsel and the chancellor, and how it has obviously impeded reaching a final decision in this case. After fifteen months from the filing of this case, the parties were still hearing "temporary" custody matters. Their bad feelings have apparently existed through most of this case and are now

the cause for this case coming to a standstill — at least until this court's ruling on the certiorari-recusal issue.

In listening to the audio tape of an August 25, 1994 hearing, it is clear that this case has become a contest of wills of the chancellor and counsel, and seems less to do with resolving the parties' differences in the divorce suit. This court, at this stage of the parties' case, has decided procedurally that it is unable to resolve the recusal issue. Nonetheless, if issues like the ones that have occurred in the past continue to occur in future proceedings, the recusal issue could well be the basis of a future appeal. If reversal based upon a failure to recuse should occur on appeal, the parties' case would then require retrial of all issues.

At this point, fault has not been discussed in specific detail or placed solely with either counsel or the trial judge. A brief period of calm for reflection now exists, and recusal might be seriously considered by the judge, considering the special circumstances and history of this case. The parties' interests and resolving their differences should be paramount. Canon 1 of the Arkansas Code of Judicial Conduct is especially noteworthy to any member of the judiciary, since that canon makes it the judge's duty to establish and maintain high standards of conduct and to observe those standards so as to preserve the integrity and independence of the judiciary. In other words, when others lose their composure, demeanor or even their professionalism, judges must keep theirs intact even when tested or provoked. On occasion, being right or vindicated of an alleged wrong does little towards establishing a high standard of conduct. The parties in this case are entitled to have their divorce case heard and decided free of personal diatribe between members of the bench and bar.

CATHLEEN COMPTON, SPECIAL JUSTICE, dissenting. The majority refuses to issue a writ of certiorari to disqualify Chancellor Alice S. Gray from presiding in divorce proceedings between Pamela Skokos and Theodore Skokos. The refusal is based on the contention that the writ of certiorari does not lie to control a trial judge's discretion. The majority also maintains that Ms. Skokos has another adequate remedy: the remedy of appeal at the close of this case. Because appeal is a woefully inadequate, not to mention, inequitable, remedy in this case, I respectfully dissent.

The transcript and briefs in this case indicate very clearly that there is acrimony between Chancellor Gray and the attorneys for Ms. Skokos. In fact, Chancellor Gray has made comments on the evidence which indicate her displeasure with Ms. Skokos as well. She challenged Ms. Skokos' credibility and she advised Ms. Skokos that she felt Mr. Skokos was "more conciliatory." She commented that it appeared that Ms. Skokos "wanted everything" — specifically, custody of the parties' minor child, possession of the marital home, and money. It is not mentioned by the Court that Mr. Skokos also wants those same things. In fact, in the majority of divorce cases, these are the common bones of contention, and the reasons for litigation. They hardly were revolutionary requests. Chancellor Gray has a duty to be "fair and impartial" to all litigants in her court, and her commentary is unnecessary.

The animosity between Chancellor Gray and Ms. Skokos' counsel is evident. This is most unfortunate. Perhaps Ms. Skokos' attorneys "goaded" her into her actions. It does not matter. Everybody in that courtroom who holds a license to practice law or a judgeship is duty bound, honor bound, and ethically bound to be professional to one another and to the litigants.

The Chancellor on more than one occasion refused to allow attorneys for Ms. Skokos to make a record. She interrupted during their questions and their arguments. She routinely reminded them of the time constraints being imposed by the Court. She engaged in a running commentary about their demeanor. She also testified from the bench during a recusal hearing.

Yet the majority believes that appeal will be an adequate remedy, distinguishing this case from *Foreman* v. *State*, 317 Ark. 146, 875 S.W. 2d 853 (1994) in which we granted a writ of certiorari. In *Foreman*, we granted the writ because Mr. Foreman would otherwise have been incarcerated until tried. While it is not argued that a contested divorce case is as difficult to live through as an incarceration, the similarities should not be overlooked. If Ms. Skokos is required to wait until an appeal occurs, she is subject to the continuing lack of dignity she has experienced to date. Her husband has control of the marital assets, her attorneys cannot finish their sentences without being interrupted by the Court or held in contempt, and it is doubtful whether a com-

plete record can be properly made. If Ms. Skokos has not already lost all respect she had for our justice system, she will. In addition to those problems, this Court's majority has *sanctioned* an appeal which can only be costly to both litigants, as well as to their minor daughter. It is mystifying to see the majority invite an appeal to this Court, while holding that an appeal based on the facts of this case is an adequate remedy.

This Court has supervisory powers over lower courts through Article 7, Section 4, which states:

> The Supreme Court, except in cases otherwise provided by this Constitution, shall have appellate jurisdiction only, which shall be coextensive with the State, under such restrictions as may from time to time be prescribed by law. It shall have a general superintending control over all inferior courts of law and equity; and, in aid of its appellate and supervisory jurisdiction, it shall have power to issue writs of error and supersedeas, certiorari, habeas corpus, prohibition, mandamus, and quo warranto, and, other remedial writs, and to hear and determine the same. Its judges shall be conservators of the peace throughout the State, and shall severally have power to issue any of the aforesaid writs.

Those powers although historically used at the appellate level, are not limited by the constitutional language, by statute, or by case law, to appeals. See *Foreman* v. *State, supra.* Because we are constitutionally mandated to be "conservators of the peace" throughout the State, we should exercise those powers for the benefits of Mr. Skokos, Ms. Skokos, Mandy Skokos, Chancellor Gray and each attorney involved. This case has deteriorated to a level that causes the need for drastic intervention and the earliest possible resolution. Further, we have held that, in order for the writ of certiorari to lie, we must be presented with ". . . plain, manifest, clear and gross abuse of discretion." *Shorey* v. *Thompson*, 295 Ark. 664, 750 S.W. 2d 955 (1988). We have been so presented in the instant case, and the writ should have been issued.

The other matters raised by Ms. Skokos concern the disqualification of Mr. Les Hollingsworth, one of the attorneys for Mr. Skokos and of Arkie Byrd, the attorney ad litem for Mandy

Skokos. Since the writ is denied, it is unnecessary to reach these issues. Parenthetically, however, it is noted that if every attorney who contributes to the campaign of a state court judge is automatically suspect and should be disqualified, both the bench and the bar of this great little state are in serious trouble.

For all the foregoing reasons, and because of the importance of the preservation of the integrity and dignity of the justice system, I respectfully dissent from the majority opinion, and would grant the writ.